UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IRON WORKERS LOCAL 401 ANNUITY FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HUMANA INC., BRUCE D. BROUSSARD, and SUSAN M. DIAMOND,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS**

Plaintiff Iron Workers Local 401 Annuity Fund ("Plaintiff"), by and through Plaintiff's counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Humana Inc. ("Humana" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

I.  **NATURE OF THE ACTION AND OVERVIEW**

1.  This is a federal securities class action on behalf of a class of all persons and entities who purchased or otherwise acquired Humana common stock between July 27, 2022, and January 24, 2024, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and

1

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2. Humana, a Delaware corporation with principal executive offices in Louisville, Kentucky, is a health insurance company that provides medical benefit plans to approximately 17 million members. As is relevant here, Humana offers individual Medicare plans (approximately 70% of the Company's retail revenues), group Medicare plans (approximately 8% of the Company's retail revenues), commercially fully-insured plans, and specialty medical benefit plans. Humana's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "HUM."

3. The Class Period begins on July 27, 2022, to coincide with the Company's announcement of its second quarter 2022 financial results. As is relevant here, Humana reported adjusted earnings per share ("EPS") of $8.67 for the quarter, an "outperformance" of approximately $1.00 per share higher than the Company's previous projections. Humana stated that its "outperformance" versus prior expectations was "driven primarily by . . . better-than-anticipated medical cost trends in the company's individual Medicare Advantage and Medicaid businesses" and further explained that medical costs for Humana's individual Medicare Advantage business were "running favorable to our expectations." Throughout the Class Period, Defendants continued to assure investors—and analysts who repeatedly inquired about potential pent-up demand for healthcare services that built-up under COVID restrictions—that "in-patient unit costs and non-in-patient trends [were] coming in lower than [the Company] initially estimated" and that "there really isn't pent-up demand that [the Company has] to be concerned about" negatively impacting utilization rates and profitability.

4. Despite these assurances, investors began to learn the truth about the pressures on the Company's profitability on June 13, 2023, when UnitedHealth Group Inc. ("UnitedHealth"), one of Humana's primary health insurer competitors, revealed that it was seeing "higher levels" of outpatient care activity and suggested that higher utilization rates were due to "pent-up demand or delayed demand being satisfied." UnitedHealth further explained that it was "seeing very strong volumes" in certain areas, including ambulatory surgery, and an overall "higher number of cases that are being performed." Given the similarities in Humana's and UnitedHealth's businesses, and the likelihood that Humana was also suffering from increased utilization and costs due to pent-up demand, the price of Humana common stock declined $57.63 per share, or more than 11%, from a close of $512.63 per share on June 13, 2023, to close at $455.00 per share on June 14, 2023.

5. Just three days later, on June 16, 2023, Humana confirmed that it also was seeing "higher than anticipated non-inpatient utilization trends, predominately in the categories of emergency room, outpatient surgeries, and dental services, as well as inpatient trends that have been stronger than anticipated in recent weeks, diverging from historical seasonality patterns." Although the Company re-affirmed its full year insurance segment benefits expense ratio guidance (a key measure of profitability) of between 86.3% and 87.3%, it warned investors that it "now expects to be at the top end of this full year range"—i.e., reduced profitability. Additionally, Humana explained that it now "assume[d] it will continue to experience moderately higher-than-expected trends for the remainder of the year." On this news, the price of Humana common stock declined $18.20 per share, or almost 4%, from a close of $463.85 per share June 15, 2023, to close at $445.65 per share on June 16, 2023.

6. Following these initial admissions regarding escalating utilization rates, the Company announced additional increases in its expected medical costs. In August 2023,

3

Defendants revealed that the utilization rate increases first disclosed in June had stabilized at the new higher levels.  Then, on November 1, 2023, Defendants announced that the Company was increasing its benefits expense ratio for 2023 to approximately 87.5% (from a range of 86.3% to 87.3% projected earlier in the year), which implied a fourth quarter ratio of 89.5%.  Despite this increase, Humana reaffirmed its 2023 adjusted EPS guidance of "at least" $28.25 per share.

7.      On January 18, 2024, Humana preliminarily released its financial results for the fourth quarter and full year 2023, and shocked investors by revealing that its benefits expense ratio had increased to approximately 91.4% for the fourth quarter of 2023 and approximately 88% for the full year 2023.  As a result, the Company's 2023 adjusted EPS were only $26.09 per share, or more than $2 per share less than what the Company had predicted in November 2023.  In response to this announcement, the price of Humana common stock fell $35.78 per share, or approximately 8%, from a close of $447.76 per share on January 17, 2024, to close at $411.98 per share on January 18, 2024.

8.      A week later, on January 25, 2024, the Company further shocked the market when it announced a loss for the fourth quarter of 2023, and stated that it expected the higher level of medical costs would persist for all of 2024.  As a result, Humana revealed that it expected 2024 adjusted EPS of only $16 per share (a $10 per share decrease from 2023 and well below analysts' expectations of $29 per share).  In response to these revelations, the price of Humana common stock declined an additional $47.04 per share, or nearly 12%, from a close of $402.40 per share on January 24, 2024, to close at $355.36 per share on January 25, 2024.

9.      This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations.  Specifically, Defendants downplayed pressures on

the Company's adjusted EPS resulting from increased medical costs associated with pent-up demand for healthcare procedures (especially as COVID concerns abated) which, contrary to the Company's assurances, resulted in increased utilization rates and costs.

10.     As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock pursuant to the revelation of the fraud, Plaintiff and other members of the Class (defined below) have suffered significant damages.

## II.     JURISDICTION AND VENUE

11.     Plaintiff's claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

12.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

13.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Humana is incorporated in this District.

14.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    PARTIES

15.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Humana common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

16.     Defendant Humana is a Delaware corporation, with its principal executive offices at 500 West Main Street, Louisville, Kentucky 40202.

17. Defendant Bruce D. Broussard is the Company's Chief Executive Officer and a Company Director.

18. Defendant Susan M. Diamond is the Company's Chief Financial Officer.

19. Defendants Broussard and Diamond are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Humana's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

21. Humana and the Individual Defendants are collectively referred to herein as "Defendants."

## IV. SUBSTANTIVE ALLEGATIONS

### A. Background

22. Humana is a Delaware corporation with principal executive offices in Louisville, Kentucky. It is a health insurance company that provides medical benefit plans to approximately 17 million members. As is relevant here, Humana offers individual Medicare plans (approximately 70% of the Company's retail revenues), group Medicare plans (approximately 8% of the

Company's retail revenues), commercially fully-insured plans, and specialty medical benefit plans.

23.     The Company's common stock trades on the NYSE under the ticker symbol "HUM."

### B.     Defendants' False and Misleading Statements

24.     The Class Period begins on July 27, 2022, to coincide with the Company's announcement of its second quarter 2022 financial results. Among other things, Humana reported adjusted EPS of $8.67 for the quarter, an "outperformance" of approximately $1.00 per share higher than the Company's previous projections, which was "driven primarily by . . . better-than-anticipated medical cost trends in the company's individual Medicare Advantage and Medicaid businesses, partially offset by higher than expected non-inpatient utilization in group Medicare Advantage." Humana also indicated that low utilization rates would continue into the future and raised its full year 2022 adjusted EPS guidance by $0.25 per share to "approximately $24.75" due to "lower utilization trends and lack of COVID-19 headwind seen to date."

25.     In response to a question from a Goldman Sachs analyst about the reasons for the favorable utilization rates during the Company's earnings call with investors that same day, Defendant Diamond, the Company's Chief Financial Officer, attributed lower inpatient utilization rates to reduced spread of the flu, "continued inpatient-to-outpatient shifts," and "improved impact from some of [the Company's] utilization management programs." Defendant Diamond also expressed confidence that these factors would continue to favorably impact utilization rates, explaining, "we don't have any reason to think that inpatient to outpatient or the positive utilization management impacts won't continue for the rest of the year, and so that is contemplated in our full year guide." Acknowledging a higher utilization rate in the Company's group Medicare

Advantage segment, which accounted for only 8.4% of Humana's 2021 revenues, that "has turned out to be more reflective of just deferred utilization and pent-up demand," Defendant Diamond explained that this "pent-up demand . . . may still moderate in the back half of the year," and assured investors that "we'll certainly continue to monitor it."

26. Throughout the Class Period, Defendants continued to downplay the risk that pent-up demand for healthcare services would cause a utilization surge that would pressure the Company's profitability. For example, when the Company held its Investor Day on September 15, 2022, Defendant Diamond assured investors that medical costs for Humana's individual Medicare Advantage business were "running favorable to our expectations," driven by "lower-than-expected in-patient utilization." Defendant Diamond further touted that that "those trends have continued in the recent weeks" with "in-patient unit costs and non-in-patient trends coming in lower than [the Company] initially estimated." Defendant Diamond also explained that while higher utilization in the first quarter of 2022 had been "potentially due to pent-up demand," the Company was "seeing positive current year restatements and moderating trends" in its group Medicare Advantage segment, including moderating surgical trends over the second quarter. Confident in its ability to sustain these utilization trends, Humana also raised its full year adjusted EPS guidance by $0.25 per share to $25.00 per share.

27. When the Company released its third quarter 2022 financial results on November 2, 2022, Humana reported that the benefits expense ratio for its retail segment—which includes its insurance business—decreased 160 basis points from 88.1% for the 2021 quarter, to 86.5% for the 2022 quarter (and decreased 40 basis points from 87.6% for the 2021 period, to 87.2% for the 2022 period), "primarily due to the favorable impact of higher per member individual Medicare Advantage premiums and lower inpatient utilization associated with the individual Medicare

8

Advantage business." During the Company's earnings call with investors the same day, Defendant Diamond reiterated that group Medicare Advantage utilization was also moderating during the third quarter "suggesting that some of the higher trend we described previously was likely due to pent-up demand," also suggesting that utilization would further moderate as the Centers for Medicare & Medicaid Services ("CMS") removed certain items from its inpatient-only list and "inpatient to outpatient movement" continued, ultimately explaining that the Company was "counting on sort of normal course baseline utilization trends."

28. Defendants continued to represent that the Company did not expect any increased costs resulting from pent-up demand for healthcare procedures in the first half of 2023. For example, when speaking at a J.P. Morgan healthcare conference on January 9, 2023, Defendant Diamond answered an analyst's question about "pent-up demand" for healthcare procedures and the impact on "inpatient/outpatient utilization levels compared to [the Company's] initial expectations," explaining that, after a spike in COVID rates, "we would see some, what we call, above baseline utilization[,] [b]ut then it would typically in a . . . reasonable period of time come back down." Defendant Diamond further explained that because "[w]e haven't had any of those major surges of COVID in a while. . . . our view would be that there really isn't pent-up demand that we have to be concerned about." Additionally, in response to a question about potential increases in surgeries in 2023 due to higher acuity levels, Defendant Diamond again indicated that "[w]e haven't seen anything that we would call an outlier or have a significant concern."

29. During Humana's fourth quarter 2022 earnings call on February 1, 2023, Defendants again directly refuted the possibility of pent-up demand pressuring the Company's profits. Specifically, Defendant Diamond highlighted the performance of the Company's Medicaid business during the quarter, noting "lower-than-anticipated medical costs" and touting

9

that the "favorable utilization seen throughout the year in [the Company's] commercial group medical and specialty businesses persisted in the fourth quarter." Defendant Diamond further dismissed concerns of a pending utilization increase due to pent-up demand, explaining that "based on all the analysis we've done, we don't believe there's a large amount of pent-up demand sort of that needs to work its way through the system" and that the Company's guidance "does not have an explicit assumption around pent-up demand, but rather just taking the resulting sort of baseline trend we experienced in 2022." The Company also issued insurance segment's benefits expense ratio guidance of between 86.3% and 87.3% for the full year 2023.

30. In connection with its 2022 annual report on February 16, 2023, Humana attributed a 40 basis point decrease in its consolidated benefits expense ratio from 86.7% in 2021, to 86.3% in 2022, primarily to "higher per member individual Medicare Advantage premiums and lower inpatient utilization associated with the individual Medicare Advantage business."

31. When the Company released its first quarter 2023 financial results on April 26, 2023, the Company raised its full year 2023 adjusted EPS guidance by $0.25 per share to "at least $28.25 [per share]," with Defendant Broussard, the Company's Chief Executive Officer, touting the Company's "strong start to the year," driven by "strong membership growth and favorable inpatient utilization trends in our individual Medicare Advantage business." During the Company's earnings call with investors that same day, Defendant Diamond noted that "[w]hile non-inpatient claims are less complete, early indicators suggest trends are in line with expectations."

32. Less than two weeks later, speaking at a Bank of America healthcare conference on May 9, 2023, Defendant Diamond again downplayed pent-up demand and the resulting pressures on the Company's profitability. Responding to a question from a Bank of America analyst

regarding strong volume numbers being reported by medical providers, Defendant Diamond explained that the Company "did contemplate that we would see normalized trend development in 2023, off of our 2022 baseline" and that the Company "did plan for a normalized trend, and you can think of that as just sort of typical trend that you would apply for utilization and unit cost on top of your starting point." Defendant Diamond further assured investors that "we'll certainly continue to watch the trends develop over the rest of the year," but that "so far, what we're seeing is . . . slightly favorable [utilization] expectations on the inpatient side" that are "consistent, if not slightly positive for the first quarter."

33. The following month, on June 1, 2023, Humana reaffirmed its full year 2023 adjusted EPS guidance of at least $28.25 per share.

34. The above statements identified in ¶¶ 24-33 were materially false and misleading, and failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants downplayed pressures on the Company's adjusted EPS resulting from increased medical costs associated with pent-up demand for healthcare procedures (especially as COVID concerns abated) which, contrary to the Company's assurances, resulted in increased utilization rates and costs.

    **C.**    **The Truth Begins to Emerge**

35. Just over one month after Defendant Diamond assured investors that the Company was observing favorable utilization trends, and less than two weeks after the Company reaffirmed its adjusted EPS guidance, investors began to learn the truth about the profitability pressures facing the Company due to pent-up demand for medical services. Specifically, on June 13, 2023, UnitedHealth, one of Humana's principal health insurer competitors, revealed that it was seeing "higher levels" of outpatient care activity and suggested that this higher utilization was due to

11

"pent-up demand or delayed demand being satisfied." UnitedHealth further revealed that it was "seeing very strong volumes" in certain areas, including ambulatory surgery, and an overall "higher number of cases that are being performed."

36. Given the similarities in Humana's and UnitedHealth's businesses, and the likelihood that Humana would also suffer increased utilization and costs due to pent-up demand, the price of Humana common stock declined $57.63 per share, or more than 11%, from a close of $512.63 per share on June 13, 2023, to close at $455.00 per share on June 14, 2023.

37. Just three days later, on June 16, 2023, Humana confirmed investors' fears when it reported "higher than anticipated non-inpatient utilization trends, predominately in the categories of emergency room, outpatient surgeries, and dental services, as well as inpatient trends that have been stronger than anticipated in recent weeks, diverging from historical seasonality patterns." Although the Company re-affirmed its full year insurance segment benefits expense ratio guidance of between 86.3% and 87.3%, given the increased utilization rates, Humana informed investors that it "now expects to be at the top end of this full year range"—revealing a less profitable claims environment. Critically, the Company also revealed that it "assume[d] it will continue to experience moderately higher-than-expected trends for the remainder of the year." The Company further revealed that Humana had already considered the increased utilization rates in connection with bids it submitted to CMS in connection with the 2024 Medicare Advantage program eleven days prior, on June 5, 2023.

38. On this news, the price of Humana common stock declined $18.20 per share, or almost 4%, from a close of $463.85 per share June 15, 2023, to close at $445.65 per share on June 16, 2023.

39. Following these initial admissions regarding escalating utilization rates, the Company continued to announce additional increases in its expected medical costs over the following months. While Defendants indicated in August 2023 that the utilization rate increases first disclosed in June had stabilized at the new higher levels, on November 1, 2023, Defendant Diamond announced, in connection with Humana's third quarter 2023 investor conference call, that the Company was "planning for the higher level of utilization seen in the third quarter to continue for the remainder of the year." Defendant Diamond stated that Humana was "increasing [its] full year insurance segment benefit ratio guidance to approximately 87.5%, which implies a fourth quarter ratio of 89.5%"—an increase from the range of between 86.3% and 87.3% projected earlier in the year. Despite the increased benefits expense ratio, Humana reaffirmed its 2023 adjusted EPS guidance of "at least" $28.25 per share.

40. Then, on January 18, 2024, Humana preliminarily released its financial results for the fourth quarter and full year 2023, and shocked investors by revealing that its benefits expense ratio had increased to approximately 91.4% for the fourth quarter of 2023 and approximately 88% for the full year 2023. Given the Company's inability "to offset the entirety of the higher than anticipated medical costs that continued to increase through the end of the fourth quarter," the Company's 2023 adjusted EPS were only $26.09 per share, or more than $2 per share less than what the Company had predicted in November 2023.

41. In response to this announcement, the price of Humana common stock fell $35.78 per share, or approximately 8%, from a close of $447.76 per share on January 17, 2024, to close at $411.98 per share on January 18, 2024.

42. On January 25, 2024, the Company further shocked the market when it announced a loss of $4.42 per share (adjusted loss per share of $0.11) for the fourth quarter of 2023 that was

"driven by higher than anticipated inpatient utilization . . . and a further increase in non-inpatient trends," and stated that it expected the higher level of medical costs would "persist throughout 2024." As a result, Humana revealed that it expected 2024 adjusted EPS of only $16 per share (a $10 per share decrease from 2023 and well below analysts' expectations of $29 per share).

43. In response to a question during the accompanying investor conference call about the Company's ability to predict medical costs by using data from preauthorizations for procedures, Defendant Diamond indicated that the increases in medical costs for the fourth quarter of 2023 were "probably more disproportionately inpatient-driven" and admitted that "[w]e get authorization data for over -- like 99% of the inpatient events that occur" and that "it's very accurate in predicting, and we do receive it in more real time." Defendant Diamond failed, however, to answer why—if the Company had clear insight into inpatient procedure medical trends—the elevated level of medical costs had not been communicated to investors in a timelier fashion.

44. In response to these revelations, the price of Humana common stock declined an additional $47.04 per share, or nearly 12%, from a close of $402.40 per share on January 24, 2024, to close at $355.36 per share on January 25, 2024.

## V. PLAINTIFF'S CLASS ACTION ALLEGATIONS

45. Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Humana common stock during the Class Period (the "Class"). Excluded from the Class are Defendants, their agents, directors and officers of Humana, and their families and affiliates.

46. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

47. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a. Whether Defendants violated the Exchange Act;

    b. Whether Defendants omitted and/or misrepresented material facts;

    c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. Whether Defendants knew or recklessly disregarded that their statements were false and/or misleading;

    e. Whether the price of Humana common stock was artificially inflated; and

    f. The extent of damage sustained by members of the Class and the appropriate measure of damages.

48. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

49. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable.

## VI. APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

51. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

15

    a.    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.    The omissions and misrepresentations were material;

    c.    The Company's common stock traded on an efficient market;

    d.    The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of Humana common stock; and

    e.    Plaintiff and the Class purchased Humana common stock between the time the Company and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

52.    At all relevant times, the market for the Company's common stock was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII. <u>NO SAFE HARBOR</u>

53.    Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false. None of the historic or present-tense statements made by Defendants were assumptions

underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII. LOSS CAUSATION/ECONOMIC LOSS

54. Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class. The price of Humana common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. As a result of their purchases of Humana common stock during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

## IX. ADDITIONAL SCIENTER ALLEGATIONS

55. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Humana common stock during the Class Period.

## X. CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violations of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

56. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

57. During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Humana common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

58. Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Humana common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

60. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

61. The Individual Defendants acted as controlling persons of Humana within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the

Company, including the content and dissemination of the various false and/or misleading statements. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the activities giving rise to the securities violations as alleged herein, and exercised the same.

63. As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act. As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Humana common stock during the Class Period.

XI. **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

    a.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

    b.    Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

   c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

   d. Such other and further relief as the Court may deem just and proper.

## XII. <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: June 3, 2024

*Of Counsel:*

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**
Naumon A. Amjed (DE Bar ID #4481)
Ryan T. Degnan
Jonathan Z. Naji
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
jnaji@ktmc.com

*Counsel for Plaintiff Iron Workers Local 401 Annuity Fund*

**BERNSTEIN LITOWITZ BERGER**
 **& GROSSMANN LLP**

*/s/ Gregory V. Varallo*
Gregory V. Varallo (DE Bar ID #2242)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com

*Counsel for Plaintiff Iron Workers Local 401 Annuity Fund*