# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
Civil No. 2:20-cv-02155-SRC-CLW

INDUSTRIENS PENSIONSFORSIKRING          :
A/S, STEPHEN KABAK, AS TRUSTEES         :
OF THE STEPHEN KABAK & JOY SCHARY       : TRANSCRIPT OF PROCEEDINGS
LIVING TRUST, individually and on       :            - Motion -
behalf of all others similarly          :
situation,                              :
                                        :
                Plaintiffs,             :
                                        :
        v.                              :
                                        :
BECTON, DICKINSON AND COMPANY,          :
et al,                                  :
                                        :
                Defendants.             :
  - - - - - - - - - - - - - - - - - - x


C O N D U C T E D   V I A   Z O O M


                        Heard: November 4, 2020


B E F O R E:

                THE HONORABLE STANLEY R. CHESLER,
                UNITED STATES DISTRICT JUDGE


Pursuant to Section 753 Title 28 United States Code, the
following transcript is certified to be an accurate record as
taken stenographically in the above entitled proceedings.

S/WALTER J. PERELLI


WALTER J. PERELLI, CCR, CRR
Official Court Reporter

A P P E A R A N C E S:

KESSLER TOPAZ MELTZER & CHECK, LLP
BY:  JOSHUA E. D'ANCONA, ESQ.
     NAUMON A. AMJED, Esq.
Attorneys for Lead Plaintiff Industriens Pensionsforsikring
   and Putative Class

THE ROSEN LAW FIRM
BY:  PHILIP KIM, ESQ. (appearing pro hac vice)
Attorneys for Movant Michael Kim

McCARTER & ENGLISH, LLP
BY:  RICHARD HERNANDEZ, ESQ.
   - and -
WINSTON & STRAWN, LLP
BY:  JAMES P. SMITH, III, ESQ.
Attorneys for Defendant Becton, Dickinson and Company,
   and Defendants Vincent A. Forlenza, Thomas E. Polen and
   Christopher R. Reidy

WALTER J. PERELLI, OFFICIAL COURT REPORTER, NEWARK, NJ

THE DEPUTY CLERK:  Good morning, Judge.

THE COURT:  Good morning, Ms. Trivino.

THE DEPUTY CLERK:  Good morning.  The attorneys have been advised that they need to speak slower than normal.  Do not interrupt each other, and then as they speak they need to identify themselves each time for the Court Reporter.

This is Kabak v. Becton Dickinson, 20-2155.

Please note your appearances for the record.

THE COURT:  Please go ahead.

MR. D'ANCONA:  Good morning, your Honor.

My name is Joshua D'Ancona from Kessler Topaz Meltzer & Check, on behalf Lead Plaintiff.  I'm joined by my colleague, Mr. Naumon Amjed, who has the pro hac vice motion pending before your Honor.  Thank you.

MR. AMJED:  Good morning, your Honor.

THE COURT:  Good morning.

MR. KIM:  Good morning, your Honor.  Philip Kim, Rosen Law Firm, for Movant, Michael Kim.  Good morning.

THE COURT:  Good morning.

MR. HERNANDEZ:  Good morning, your Honor.  Richard Hernandez from McCarter & English on behalf of Defendants Becton Dickinson and the Individual Defendants.

THE COURT:  Good morning to you.

MR. SMITH:  Good morning, your Honor.  James Smith, Winston & Strawn, also on behalf of Defendants.

THE COURT: Okay. Good morning.

All right. We also have Ms. Trivino our Court Clerk, we have Ms. Piriz who is the law clerk on this case, and we have Walter Perelli who is our Court Reporter.

At this point, Mr. Kim, it's your application. Let me hear you.

MR. KIM: Good morning, your Honor.

So, we're here today on our motion for reconsideration. And, you know, certainly when the court issued the plaintiff Order it noted that a lead plaintiff need not have standing to bring every single claim under the CitiBank case from the Second Circuit, and we don't disagree with that. The CityBank decision itself, however, says that the PSLRA did not alter preexisting case law and rules relating to the other Rule 23 requirements.

And what prompted our motion, your Honor, is the fact that when Industriens, Lead Plaintiff, who the Court appointed to represent at the time a class that included all securities purchasers of Becton Dickinson, filed an amended complaint that omitted the options claims -- and Mr. Kim had a significant options loss, he lost over $140,000 -- and it was on that basis we made this motion. Because, clearly, by omitting these claims it appears that the interest of Industriens is diverting from the entire Class. It's conflicting with the purchasers of options we say are excluded without any consideration, without

any notice to other investors.  And on those grounds we believe it's appropriate now that Mr. Kim should be appointed a Representative Plaintiff for the Options Class that Industriens has decided to neglect and to abandon.

In their papers they make some arguments about, well, you know, there's these cases, the Bank of America case, Facebook cases.

I think the differences in those cases are that the claims that ultimately were excluded were initially brought or had representation by the original lead plaintiffs who were in the original complaints.  In this case, Industriens is abandoning these claims and they provide no explanation as to why they did that.  They merely say:  Well, it's not in the best interest of the entire Class.  Well, the entire Class that they were appointed to represent included Mr. Kim and other options purchasers.

If they're saying the entire Class as they define it now, which is the stock purchasers, that certainly doesn't benefit stock purchasers.  And the whole point of having a lead plaintiff is that they're appointed to represent the class that was noticed, and the class that was noticed was securities purchasers.

Now, there are some cases that hold that a lead plaintiff, you know, has authority to decide what claims to bring, has authority to control the litigation.  But when those

decisions impact absent class members and when those decisions indicate that there's a conflict, that's when the court needs to intervene, that's when absent class members need to intervene, and that is what we've done, your Honor. And based on the submissions made by Industriens there's really no basis not to include these options claims.

They claim that Mr. Kim could bring his own individual action. The reality is in securities class actions, though Mr. Kim, a sophisticated investor as we noted in the Lead Plaintiff briefing, he has an MBA, he's got a degree of economics from the University of Chicago, and he did lose $140,000, but that loss is too small to bring an individual case. The expert reports that would be required to demonstrate damages would be too small. And that's why securities cases are often brought as class actions because individually economically it's not feasible to bring a claim. So for him to bring an individual case is not possible, it's economically not possible.

Secondly, the idea that maybe some time later these claims can be brought, I mean, the only way these claims can be brought is through an amended complaint. And while this case is going through the pleading process and no options claims are being represented, the statute of limitations is ticking.

The China Agritech case says that the statute of limitations cannot be tolled while a class action is pending, and the statute of repose can't be tolled whatsoever. So we

WALTER J. PERELLI, OFFICIAL COURT REPORTER, NEWARK, NJ

have a situation where when this case was noticed, options investors believed that they were being represented. The amended complaint was filed; they're not being represented. And it's creating an undue prejudice, and certainly it requires the Court to intervene here and grant the relief requested.

Unless the Court has any questions I'll reserve for short rebuttal, if possible.

THE COURT:  Thank you.

Let hear from lead counsel for Plaintiff.

MR. D'ANCONA:  Good morning, Judge Chesler.  Once again, Joshua D'Ancona on behalf of Lead Plaintiff.

Let me begin by saying, there is no manifest injustice or error supporting reconsideration here.  There is no emergency.  This motion came in three and a half months after your Honor's Order on the Lead Plaintiff matter, more than --

THE COURT:  Let me stop you at this point.

Whether it's denominated a motion for reconsideration or not is largely irrelevant.  As all the parties in this court know, the Court has the authority during the pendency of a class action to reassess lead counsel and lead plaintiff at any time it believes it's appropriate.  So how this motion is denominated and whether it's brought timely under reconsideration rules is largely irrelevant.  So --

MR. D'ANCONA:  Understood.

THE COURT:  All right?  So --

WALTER J. PERELLI, OFFICIAL COURT REPORTER, NEWARK, NJ

MR. D'ANCONA: Understood.

THE COURT: -- let's get to the merits here.

Your argument is that lead plaintiff is selected under the PSLRA for a reason, which is to take out of this whole process, to put it bluntly, the gamesmanship between counsel that frequently occurs in class action litigation, and which prior to the PSLRA had, in fact, been the driving force in litigation over who was going to be appointed lead counsel and lead plaintiff. Correct?

MR. D'ANCONA: I would not disagree with your Honor.

THE COURT: Okay. So I follow the PSLRA. You have the biggest loss. I did not see any reason not to appoint your client and you the Lead Counsel and Lead Plaintiffs under those circumstances given your record as a law firm representing Plaintiffs and Industriens' status as having the biggest loss.

Now, one thought does pop up, however, which is: Why have the options claims been deleted from the Amended Complaint?

And, quite frankly, the Court obviously has no business probing into tactical decisions by a party in this case. All right? But it does strike the Court as a bit queer. So to the extent that you think you can explain what's going on here without, frankly, tipping your hand to Defendants, I'm just curious.

MR. D'ANCONA: I appreciate it, your Honor. The

WALTER J. PERELLI, OFFICIAL COURT REPORTER, NEWARK, NJ

points are all very well taken. Let me try to answer the question directly here. I think you're asking: Why did we change it and what do we intend to do here.

We made the decision to draft the Complaint and draft the definition of the Class at that time based on the information, the best information that we had at that time and how we viewed our standing arguments at the time, and very much, your Honor, in light of what courts have approved process-wise in cases like the Bank of America cases before Judge Castel and Judge Chin. So we know that common stock investors are the foundation of this Class. There were tens of millions of shares of Becton Dickinson common stock traded during the Class period. Market information is public and well understood on that front.

As Mr. Kim has argued in his Lead Plaintiff papers, your Honor, options class claims perhaps in a bit of contrast, the damages related to them, they can require additional expert analysis that can be fairly significant beyond what we need to understand common stock issues for purposes of pleading.

Now, we have not abandoned, just to be clear, your Honor, we have not abandoned the options class possibility in this case. It is something that we continue to consider. I think that's a misunderstanding of Mr. Kim and his counsel. They did not reach out to us before filing this motion, and that's okay. But it seems to be a misunderstanding where we're

passing in the night here.

We intend to perform the necessary economic analysis, your Honor, after we know the precise shape of the case that passes through the Court's motion-to-dismiss opinion. We see that information about the shape of the case, the contours of what's in and what's out, as potentially critical in evaluating efficiently whether options claims bear class treatment in this case.

If they do, we may seek to amend. We may plead in a named plaintiff with those claims, as was done in the Bank of America case. And I think that Mr. Kim is not quite correct on what happened in the Bank of America case after the first amended complaint. In that case, your Honor, which was our firm's case and I was a junior attorney on that case, the first amended complaint went in and there was just common stock and preferred stock. The options were not in, and debt was not in that amended complaint after the lead plaintiff appointment.

Subsequent to that, Judge Chin and then Judge Castel permitted an amendment, and a second amended complaint went in in which options claims were pleaded. That is a process that we lived through at my firm, and we think that that is the prudent and most efficient approach, most efficient approach which would avoid waste here because it would allow us to understand when analyzing the potentially complex options issues related to damages and whether class treatment is

appropriate, whether a class claim is supported here. So in light of that case law we thought that that course of action was appropriate and available to us here and completely within our discretion and authority to pursue as a course of action if we deemed it appropriate.

THE COURT: Okay. Thank you.

MR. D'ANCONA: And we believe that -- to be clear, your Honor, we have not abandoned the options claim, and we believe that we have strong claims that will survive the motion to dismiss. And after we have that order and we study it, we will apply it to the necessary economic analysis of the options-related damages and causation and class issues with the help of economic experts. So that is our plan here.

THE COURT: Okay. Thank you.

Mr. Kim, let me ask you this:

How does the decision not to include options trading in the amended Class prejudice you or your client?

MR. KIM: Well, it is prejudice because the claims have been abandoned. If it's not in the pleading it's been abandoned. And this notion that --

THE COURT: Let me stop you there. All right?

MR. KIM: Yes.

THE COURT: The fact that it was pleaded means that until the Amended Complaint was filed there was a class action covering option trading. Correct?

WALTER J. PERELLI, OFFICIAL COURT REPORTER, NEWARK, NJ

MR. KIM: That is correct.

THE COURT: That means until that point in time the statute of limitations was stayed as to options traders. Correct?

MR. KIM: On an individual basis, yes.

THE COURT: Yes. Okay. So your client, a $148,000 loss, and it's stayed on an individual basis until that claim was dropped. Okay.

Now, I understand that you indicate the $148,000 is not enough to pursue a lawsuit here. But, Mr. Kim, I've been doing this for a long time, and I can tell you, I've seen an awful lot of securities fraud cases where when the time for class certification occurred and the settlement occurred, lo and behold, plaintiffs with just the same amount of loss as you opted out of the claim, out of the case to see if they could negotiate a better settlement.

You're aware of that process, are you not?

MR. KIM: I'm aware of the opt-out process. I've never personally engaged in that.

THE COURT: Okay. But you're aware that it's not uncommon in securities fraud cases for holders of large amounts of securities, in fact, opt-out at the last minute believing that they can negotiate a better settlement than the class negotiated. Correct?

MR. KIM: That's right, your Honor. But if they were

WALTER J. PERELLI, OFFICIAL COURT REPORTER, NEWARK, NJ

to settle the case today on this complaint, options purchasers would not be included, so there would be nothing for us to opt out of. That's one of the issues if no one hit the bargaining table pressing for the options claims.

And, your Honor, I'd just like to point the Court to this case called Kraft Heinz. And I think what it will do, it will shed light on sort of Lead Plaintiff's response as to why the options claims were not included. I believe the option claims were not included because they do not have a plaintiff that purchased options shares. And the argument that, you know, there are complex issues of damages and class certification, those are issues that are in the later part of the case. We're at the pleading stage. And oftentimes options claims are included with the pleading, particularly if there are lead plaintiffs movants with options because the options purchasers are affected by the same misstatements that are issued. That's why the initial class action here was brought on behalf of all securities purchasers in light of the same statements were materially false and misleading.

And if you look at Kraft Heinz, that's a case that the Kessler firm was involved in, and they were appointed co-lead counsel, and in that case we represented options purchasers, and there were other options purchasers, and we made similar arguments that we made with this Court.

And in that case the court in the Northern District of

Illinois had said, well, you know, we're going to appoint Kessler's clients as lead plaintiff because they have the largest stock loss, and these other lawyers who are sitting on the sidelines that have these derivative securities, you know, they can monitor the case, and if at some point if the options claims are not included or not being properly represented, they can come and intervene, come and make a motion. And lo and behold, when they filed their amended complaint they included the options purchasers because they had declined.

And, you know, I think the reason why they didn't include it here is because they didn't have the client. You know, these ideas, well, we want to assess whether a class can be certified or not certified, typically if the stock is efficient you're going to be able to get the options class certified. But that's something that you would do with the class certification. You would include the options claim in the amended complaint, you get through the motion to dismiss, you would conduct discovery, you have an options plaintiff and a stock plaintiff. You'd be able to get the options related discovery, and then when you move for class certification you'd have an options representative and a stock representative.

What they're suggesting is, is, well, there is no options representative and, you know, at some point later when they move for class certification they'll have to file an amended complaint, maybe there's a motion to intervene assuming

they even have an options plaintiff, and it creates a situation where, you know, you're creating these artificial barriers. There should be an options purchaser in the case from the get-go.

And Mr. Kim is the only one who moved forward as an options purchaser. But when these notices went out, people who bought options believed they were in the class, and at this point they're not. And these other folks aren't going to bring their own claims. They don't know, they think their claims are covered.

MR. D'ANCONA: Your Honor, if I may?

THE COURT: Yes.

MR. D'ANCONA: Yes.

Your Honor, what counsel is suggesting is a scheme that is unsupported and contrary to the statute, contrary to the lead plaintiff scheme under the PSLRA. The lead plaintiff under really all of the case law for the last 20-plus years necessarily makes decisions that limit and define the class. And there is no right for excluded investors, investors who may be left out of a given class, to come and bring their own satellite class claims on that basis. And that's the Hevesi case that your Honor cited in the Lead Plaintiff Order, that's the Bank of America cases, that's Boeing, that's so many cases in this area of law.

And the reason for that is that it would gut the

WALTER J. PERELLI, OFFICIAL COURT REPORTER, NEWARK, NJ

statutory lead plaintiff provision which is supposed to vest authority and prerogative in the court-appointed lead plaintiff to make these types of decisions. It would leave the tail wagging the dog. Every excluded investor would get to say: Well, I'm out of the class at the moment, therefore, I'm entitled to bring my own class action to protect me and people like me. And that is just directly contrary to virtually what call of the cases have seen and said about that very question even when there are potential statute of limitations issues.

It's -- that would be the tail wagging the dog. And that's the problem with what Mr. Kim proposes right now, especially where I'm representing to the Court -- notwithstanding what Mr. Kim said, your Honor -- I'm representing to the Court that our plan is essentially what exactly was approved of by the judges, Judge Castel and Judge Chin, in the Bank of America litigation years ago.

THE COURT: Thank you. All right.

The Court is satisfied that based upon the record before it the motion for reconsideration must be denied. The Court indicated earlier in its prior decision that it had appointed Lead Plaintiff and Lead Counsel pursuant to the PSLRA.

Counsel for Lead Plaintiff is absolutely correct about the purpose of the PSLRA. It is, in fact, to obviate the condition which existed prior to the PSLRA where securities

WALTER J. PERELLI, OFFICIAL COURT REPORTER, NEWARK, NJ

class action litigation was lawyer-driven and, instead, to create the scenario in which the litigation, settlement, and disposition would be driven by a plaintiff who had a real economic stake in the lawsuit and therefore was in a position to exercise the fiduciary obligations that a lead plaintiff has, which is to seek the best possible resolution for the plaintiff class as opposed to the prior situation in which it was not uncommon for plaintiffs' lawyers essentially to control the entire litigation lock, stock and barrel and the nominally designated lead plaintiff had virtually no role in the process.

That process also created a situation in which jockeying between counsel who represented different parties in the case would maneuver in order to, frankly, obtain the best economic situation for their law firms. It is no secret that the creation of the PSLRA was intended and designed to prevent or minimize that type of maneuvering and jockeying by, in fact, creating a lead plaintiff and a lead counsel, both of whom were vested with control and with substantial fiduciary obligations.

In this case, the Court does not see how the options traders have been prejudiced in any way, shape or form by the fact that an amended complaint was filed which did not include the options trader group. The most pertinent statement on this issue was made by the U.S. District Court in, In re Boeing Company, Aircraft Securities Litigation, reported at 2019 WL 6052399. There, the court stated the following:

More fundamentally, it is not clear why the possible exclusion of options purchasers bears on the issue of appointment of lead plaintiff. The argument presumes an entitlement on the part of options purchasers to participate in this action that does not exist. Both the Seeks and Bush complaints purport to assert claims on behalf of purchasers of any Boeing securities, but they were not required to define the class that broadly. The complaints could have been filed on behalf of common stock purchasers only, in which case options holders would already be on the outside looking in.

If the Lead Plaintiff files a consolidated amended complaint that excludes options purchasers, those individuals would be no worse off than if the Seeks and Bush complaints that had been more narrowly drawn to exclude them in the first instance.

That statement applies equally here. In short, there is no prejudice. And, indeed, if anything else, the fact that the options traders were included in the initial complaint gives them the option of pursuing claims which might otherwise be barred because the statute of limitations indeed was tolled until at least that amended complaint was filed which excluded the options class.

For these reasons, the Court does conclude that the motion for reconsideration should be denied.

Counsel for Lead Plaintiff submit a form of Order

WALTER J. PERELLI, OFFICIAL COURT REPORTER, NEWARK, NJ

embodying the Court's determination.

Thank you, everybody.

Ms. Trivino and Ms. Piriz, stay on after we conclude.

MR. D'ANCONA:  Thank you, your Honor.

THE COURT:  Thank you.

MR. KIM:  Thank you, your Honor.

MR. SMITH:  Thank you, your Honor.

(Conclusion of proceedings.)

ooOoo

WALTER J. PERELLI, OFFICIAL COURT REPORTER, NEWARK, NJ