IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


IRON WORKERS LOCAL 401 )
ANNUITY FUND,            )
                         )
        Plaintiff,       )  C.A. No. 24-655-JLH
                         )          24-898-JLH
v.                       )
                         )
HUMANA INC., et al.,     )
                         )
        Defendants.      )


Friday, September 13, 2024
10:00 a.m.
Teleconference


844 King Street
Wilmington, Delaware


BEFORE:  THE HONORABLE JENNIFER L. HALL
    United States District Court Judge


APPEARANCES:

        BERNSTEIN, LITOWITZ, BERGER & GROSSMAN, LLP
        BY:  GREGORY V. VARALLO, ESQ.

        -and-

        KESSLER, TOPAZ, MELTZER & CHECK, LLP
        BY:  NAUMON AMJED, ESQ.

                        Counsel for the Iron Workers

APPEARANCES CONTINUED:

MORRIS, NICHOLS, ARSHT & TUNNELL, P.A.
BY:  KEVIN M. COEN, ESQ.

-and-

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, LLP
BY:  PETER L. SIMMONS, ESQ.

Counsel for the Defendant

FARNAN LLP
BY:  BRIAN E. FARNAN, ESQ.

-and-

THE ROSEN LAW FIRM
BY:  PHILLIP KIM, ESQ.

Counsel for Mr. Marathe

---------------------------

THE COURT:  Hi.  Good morning, everyone.  Sorry for the delay.  This is Jen Hall.  We're here on the line for a teleconference on pending motions in two cases.  We have Iron Workers Local 401 Annuity Fund v. Humana, et al., at 24-655.  We also have Marathe versus Humana, et al., and that's case number 24-898.

Let me ask first for appearances from plaintiffs in the Iron Workers case.

MR. VARALLO:  Good morning, Your Honor.  This is

Greg Varallo from Bernstein Litowitz.  I have with me co-counsel Naumon Amjed from Kessler, Topaz, Meltzer & Check.  Mr. Amjed is a member of the bar of this court and of the city and Delaware as well.

MR. AMJED:  Good morning, Your Honor.

THE COURT:  I'm sorry.  Do we have an appearance for the defendant?

MR. COEN:  Good morning, Your Honor.  This is Kevin Coen from Morris Nichols.  With me on the line is Peter Simmons from Fried Frank.

THE COURT:  And then we have plaintiff in the Marathe case.

MR. FARNAN:  Good morning, Your Honor.  Brian Farnan on behalf of Mr. Marathe.  That's in civil action 24-898.  And with me is Phillip Kim of the Rosen law firm.

THE COURT:  Very good.  All right.  So we've got a lot of pending motions here, but they all kind of relate to the same issues.  So we've got on the table a motion to consolidate and then a motion for the plaintiff status and we have a motion for appointment of counsel.  So let's here them all at once, because they're all related.  So we'll hear from counsel for Iron Workers Local 401 on the pending motions.  Go ahead.

MR. AMJED:  Good morning, Your Honor.  This is Naumon Amjed from Kessler, Topaz, Meltzer & Check on behalf

of Iron Workers and the lead plaintiff movant, SEB Investment Management.

I think, Your Honor, if I can sort of narrow the issues that are before the Court, in terms of the motions that are pending, there's a motion to consolidate the two cases, which is unopposed and then there is SEB's motion for appointment as lead plaintiff and lead counsel and that's unopposed.

There is one issue that the sole remaining movant, Mr. Marathe has brought up in terms of some assurances that he's requesting about SEB about how the case will be pled, but, you know, as set forth in our reply brief we think those are inappropriate and inconsistent with the case law that clearly allows the lead plaintiff, which should be SEB Investment Management, the authority to dictate how the case should be pled, how it should be litigated and any interference by a non-lead plaintiff would be inconsistent with the PSLRA.

So I think the only issue before the Court this morning that's contested is whether there is any requirement that SEB make a promise about what it intends to plead in this litigation. The *Hevesi* opinion from the second circuit I think lays out the law correctly which clearly says that the lead plaintiff is in power to control the litigation as a whole. There's nothing -- there's no debating this

concept; it's even included in the stipulation approved by the Court on June 17th, which is Docket No. 9 in the Iron Workers action.  And there's multiple cases that apply this concept to say if you're not a lead plaintiff, you don't get to come in and question how the lead plaintiffs litigates the action.

So in terms of the motions, Your Honor, I think there's not many that are actually pending given that there's no opposition to SEB's financial interest, its adequacy, its typicality.  And under the PSLRA and Third Circuit opinion, we believe it's appropriate for SEB to be appointed without any restrictions.

THE COURT:  All right.  Thank you very much.  Let's go ahead and hear from plaintiff in the other case.

MR. KIM:  Good morning, Your Honor.  Phillip Kim, Rosen Law Firm for plaintiff.  I think the issue here is a little bit different than my colleague had described it.  I think why we're here today is we wanted to avoid motion practice on this issue and we had reached out to the folks at Kessler, who we've dealt with in the past, and asked them and said, hey, you know, we understand that you filed the original complaint, which is only brought on behalf of common stockholders, which frankly is unusual because usually the initial complaint is brought on behalf of purchase of all securities.  And, you know, as a result

we filed a case on behalf of Mr. Marathe who lost a quarter million dollars in connection with losses arising from options. And after we filed and made our lead plaintiff motion, we recognized that SEB had a larger financial interest and they sought to consolidate not only the Iron Workers case, but also Mr. Marathe's case. And we inquired and asked them direct questions as to, hey, are you going to include Mr. Marathe's option investments? And you know, we didn't -- we didn't get a response that was satisfactory. They could have simply said yes, we're seeking to consolidate them. It appears that, you know, options are included at this point and, you know, we reserve our right to change our minds. Right, the lead plaintiff does have the ability, once appointed, to change the contours of the case, but they didn't provide that response. And, you know, had they provided that response, I don't think we would be here today. But, there are limits, Your Honor, to the lead plaintiff's authority. You know the PSLRA did not alter the Court's obligations and duties in overseeing class actions. They haven't cited a single case that says, you know, the PSLRA somehow diminished the Court's oversight. The Court has a fiduciary duty on behalf of absent class members. And, you know, unlike the cases cited by SEB, you know, I think *Bank of America* is sort of their central case. In this situation a lead plaintiff has not been appointed. And

it is in the Court's inherent authority to set the parameters of what class the lead plaintiff is then appointed to oversee. And I would say that that class right now are the classes reflected by the consolidated cases, right? That's all the assurance we wanted. If, you know, the lead plaintiff thereafter looks at the case and has good reason to abandon the options claims, which the case law says that they need to have some good reasons, then we can live with that. But their responses to us did not indicate that. It seemed to be very suspect to us, and those are the assurances we needed.

Now, if you look at the *Bank of America* case, 1 and 2, those involve situations where folks who purchased options in debt securities after the appointment of lead plaintiff, right? I think it was six to nine months after the original consolidation appointment of lead counsel in the *Bank of America 1* case. We had folks who bought options and debt securities on the same case, tried to seek co-lead plaintiff and co-lead counsel status to represent those cases. And the Court said well, you know, we're not going to do that, because, you know, the case has been going on for a while, there's already a lead plaintiff appointed and the judge said that the plaintiffs that had already been appointed appeared to have incentive to bring those claims, particularly the debt securities claims, because they had

invested in the debt securities.  So I think on that ground the *Bank of America* case is distinguishable.

*Bank of America 2*, this is two years later, had some other options investors trying to intervene in the case after the lead plaintiff had brought some other options claims that were dismissed on the base of lack of standing. I mean, I think in those situations when you have class members that sort of sit on their hands for years after the proverbial milk has already been, you know, spilled, it becomes very difficult for a court to interfere with an orderly process and prosecution of a class action.

Another case they cite is the *Boeing* case.  And again, while that was at the lead plaintiff stage and that was a situation where a movant sought co-lead plaintiff status.  We're not seeking co-lead plaintiff status here. We're not seeking co-lead counsel status, we just want to make sure that Mr. Marathe's claim that is being consolidated into this case continues to be represented and not rejected.  And in that case, the Court said that, you know, even if the options are not asserted in the amended complaint, class members may, among other things, seek a class claim.  So the *Boeing* case doesn't stand for the proposition that a lead plaintiff can just decide to abandon an options claim without good reason.  And, you know, I think they could have simply said, yes, you know, there's a

presumption that the options are included in this case because we're seeking to consolidate your case with our case and we're seeking to be a lead.  And this idea that the response saying, well, we're going to represent the purchasers of securities equally, I mean, they know what we were looking for, and frankly, you know, the class that Mr. Marathe brought includes not only purchasers, but sellers of put options.  So, you know, from a technical perspective, it's not necessarily included at all either, so that's why we wanted some clarity as to what their position is.

There's another case, *In re New Oriental Education & Technology Group* securities litigation which is 293 F.R.D. 483, Southern District of New York 2013.  That distinguishes the *Bank of America* cases and it's a more recent case.  It's 2013.  And in that case the Court distinguishes *Bank of America* by saying, in those decisions they did not consider statute of limitation issues, right, because the filing of a class action tolled the statute of limitations for class stoppers, right.  So that's the potential risk we have in this case if SEB abandons these options claims.  So that was a Southern District of New York case.  *Bank and America 1* and *2* are from the Southern District.  That distinguishes their cases.  So it would be more natural that the Court severed the options claims and let the options folks proceed with their own options class

action that was coordinated with the class action. We're not seeking that relief right now because we don't think it's necessary as long as either the Court sets the guard rails as to what class this lead plaintiff is appointed for, which we believe that it has the right to do based on its inherent authority and fiduciary duty that it builds the option class members. And if, look, later SEB decides that, you know what, we can't proceed with this particular claim or we need to shorten the class period, they have that right, they can do that. But the idea that they can start by rejecting our class or providing vague responses or assurances, I don't think is appropriate, nor is that fair to class members that have invested in options.

So I mean that's the crux of our position. If the Court has any questions, I'd be happy to answer those and I reserve just a little bit of time to respond to whatever arguments my colleague is going to have in opposition.

THE COURT: All right. Thanks very much. We're not going to likely give you a chance some respond. We'll let them reply to what you said, though.

Let me ask you this, just for purposes of the record, you agree that the cases should be consolidate?

MR. KIM: That's correct.

THE COURT: Okay. And you don't oppose their

motion for lead plaintiffs?

MR. KIM:  Our opposition -- we don't largely oppose it.  We oppose it to the extent that they abandon these options claims or don't provide an assurance that the option claims are currently included.

THE COURT:  All right.  And you don't oppose lead plaintiff's reselection of Kessler Topaz?

MR. KIM:  I do not.

THE COURT:  All right.  Thanks very much.

Do the defendants have anything they want to add?

MR. SIMMONS:  Peter Simmons from Fried Frank.  We certainly agree that consolidation is appropriate and it's not normally for the defendant to get to select their adversaries and tell them how to plead their claims, so we'll respond in due course.

THE COURT:  All right.  That sounds fine to me.  Let me hear again from counsel for the 24-655 case.  Anything you wanted to say in response to what you heard from your co-plaintiff.

MR. AMJED:  Yes, Your Honor.  This is Naumon Amjed again.  I'm a little bit confused as to Mr. Kim's statement about my lack of clarity because certainly that was not my intention.  In the exhibit that's submitted at 26-1, which is my response to his questioning about whether

securities includes options, which is a bedrock principle of securities law ever since the *Blue Chip Stamp* decision in the 1970s, I specifically said SEB is committed to representing all Humana investors with viable claims including options traders.  So I'm not exactly sure where the confusion arose, but from my perspective it is SEB's intention to do exactly what a lead plaintiff is supposed to do, which is to evaluate all of the claims that are viable, make decisions in the litigation that are in the best interest of the entire class and pursue those claims where they are viable.  But the idea that the lead plaintiff has to provide any non lead plaintiff some type of promise as to whether or not the claims will be included is simply inconsistent with the law.  There's the *Facebook* opinion from the Southern District of New York and the *General Motors* decision where at settlement people were objecting because they were not included in the settlement class and the courts basically said, unfortunately, you know, these are the realities of how litigation unfolds and you're not entitled to any type of assurances that you're going to be in the class.  If it's not in the class's interest to pursue certain claims, then SEB and other lead plaintiffs are entitled and it's their prerogative to make those decisions.

And, you know, Mr. Kim cited a number of cases, but in the *Bectin* case, which I think is most on point here,

we went through virtually a similar type of analysis with what we're proposing here. In the *Bectin* case, Mr. Kim representing another client, came in and said I have options, I want to be a co-lead plaintiff with the institutional investor who had only stock claims. The Court, Judge Chesler, rejected that motion, appointed our client as lead plaintiff. The lead plaintiff filed a complaint that included common stock, which is not uncommon to do. Classes are often defined with just common stock initially and they're refined throughout the litigation. When the lead plaintiff filed the amended complaint, Mr. Kim came back and said I want to reopen the process because I want to reconsider their order because options are no longer included. And what we said is we've not abandoned options, we're continuing to evaluate it and at the appropriate time we will determine whether it's right to bring those claims back in. And eventually we did bring options claims back in and those claims were settled.

And, you know, Your Honor, this is not an uncommon thing. My firm understands how to litigate these claims. SEB understands how to litigate these claims. And any type of assurance by a non lead plaintiff as to what claims will be included down the road when we don't have a full investigation, we don't have expert analysis, we don't have rulings from the Court, it's contradictory to the very

purpose of the PSLRA's lead plaintiff position.  So while I am -- you know, while I appreciate Mr. Kim saying he has no opposition to SEB's appointment, I think any further limitation on SEB's right to pursue this litigation in the best interest -- in what it believes is the best interest of the class would be inconsistent with the PSLRA.  So I would respectfully request the Court appoint SEB without any limitations.

THE COURT:  All right.  Thank you very much. That will conclude argument for today.

So we have pending, it looks like from the docket, three motions.  The first is in the 24-655 case at docket numbers 12 and 13.  Docket number 13 is a motion filed by SEB for consolidation, appointment as lead plaintiff and approval of selection of counsel.  That motion will be granted in its entirety.

We also have docket number 12, which is a motion filed by Mr. Marathe for consolidation, appointment as lead plaintiff and approval of selection of counsel.  That's granted in part and denied in part.  It's granted insofar as it requests consolidation and it's denied insofar as it requests appointment as lead plaintiff and approval of selection of counsel.

And then finally, we have a pending motion in 24-898 which is another motion from Mr. Marathe for

consolidation, appointment as lead plaintiff and approval of selection of counsel. That's granted in part and denied in part. It's granted insofar as it requests consolidation and it's otherwise denied.

All right. Is there anything we need to discuss about how we're going to proceed or should the parties meet and confer about whether there's going to be an amended complaint and how we're going to proceed with briefing on the inevitable motion to dismiss.

MR. SIMMONS: Your Honor, Peter Simmons for the Humana defendants. Mr. Amjed and I actually spoke about that earlier in the week in anticipation of this call and we've agreed conceptually and just wanted to float with the Court the plan would be that the plaintiff gets 60 days to file a consolidated amended complaint. We then have 60 days for motion to dismiss, we'd get 60 days for an opposition and 30 days for reply. So if that's conceptually okay with the Court, we'll work out the details in the stipulation and proprosed order that we'll submit in due course.

THE COURT: That is fine with me. All right. Anything else we need to address while we're on the phone?

All right. I'm hearing no response.

We'll be adjourned. Thanks. Bye bye.

(Court adjourned at 10:29 a.m.)

----------------------------------

        I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceedings.


                              /s/ Stacy M. Ingram, RPR
                              Official Court Reporter
                               U.S. District Court