# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE HUMANA INC. SECURITIES LITIGATION | Case No. 1:24-CV-00655-JLH |

**PLAINTIFF'S [PROPOSED] SUR-REPLY IN RESPONSE TO DEFENDANTS'
REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
Gregory V. Varallo (DE Bar ID #2242)
Andrew Blumberg (DE Bar ID #6744)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com
andrew.blumberg@blbglaw.com


-and-


Robert F. Kravetz (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
robert.kravetz@blbglaw.com

*Liaison Counsel for Lead Plaintiff SEB
Investment Management AB*

**KESSLER TOPAZ
 MELTZER & CHECK, LLP**
Jamie M. McCall (*pro hac vice*)
Johnston de Forest Whitman, Jr. (*pro hac vice*)
Joshua E. D'Ancona (*pro hac vice*)
Joshua A. Materese (*pro hac vice*)
Nathan A. Hasiuk (*pro hac vice*)
Nathaniel C. Simon (*pro hac vice*)
Farai Vyamucharo-Shawa (DE Bar ID #7002)
Aubrie L. Kent (*pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
jmccall@ktmc.com
jwhitman@ktmc.com
jdancona@ktmc.com
jmaterese@ktmc.com
nhasiuk@ktmc.com
nsimon@ktmc.com
fshawa@ktmc.com
akent@ktmc.com

*Counsel for Lead Plaintiff SEB Investment
Management AB*

Dated: May 7, 2025

Defendants' Reply (D.I. 63) relies on numerous cases that were not cited in Defendants' Opening Brief (D.I. 61) and that are inapplicable to the issues here, and importantly, misstates the law regarding Article III standing and assignments.  None of the new cases Defendants cite supports their mischaracterization of the law governing standing.  SEB is not asking the Court to "create an 'exception' to Article III['s]" requirements.  Reply at 2.[1]  To the contrary, it is Defendants' novel arguments that directly conflict with *Sprint Communications Co., LP v. APCC Services, Inc.*, 554 U.S. 269, 287-88 (2008), decisions of courts of appeal (including the Third Circuit), and ***multiple*** on-point district court opinions ***directly addressing SEB's standing***.

*First*, Defendants claim that Supreme Court and Third Circuit precedent requires a plaintiff to have suffered its ***own*** "injury in fact" as a prerequisite to third-party standing under Article III. Reply at 3-4 (citing *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293 (3d Cir. 2003)). This argument, based on a decision not cited in Defendants' Opening Brief, ignores the well-established prudential exception that allows asset managers like SEB to assert claims on behalf of their investment funds (which are incapable of asserting claims on their own behalf).

Indeed, five years after *Storino*, the Supreme Court's *Sprint* decision made clear that Article III permits federal courts to "entertain suits which will result in relief for parties that are ***not themselves directly bringing suit***," including "[t]rustees," "guardians ad litem," "receivers," "executors," "and so forth."  554 U.S. at 287-88.  The Second Circuit expressly relied on this language in *Sprint* in holding that courts "permit third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 109-10 (2d Cir. 2008) (citing *Sprint*, 554 U.S. at 287-88).  *Huff* did not announce a

---

[1] Unless otherwise stated, all emphases have been added and all internal citations and quotations have been omitted. Capitalized terms are defined in SEB's Opposition (D.I. 62).

fundamental change in standing law—it simply reiterated what *Sprint* confirmed.  As outlined in *Sprint* and *Huff*, a plaintiff need not have suffered its own independent "injury-in-fact" if it meets the elements for prudential standing, as is the case with SEB and its investment funds.  The contrary requirement Defendants propose here would "work a sea change in the law" and would effectively prevent trustees from representing their trusts, guardians from representing their wards, receivers from representing their receiverships, executors from representing their estates, and so on.  *Sprint*, 554 U.S. at 287-88.

Faced with this well-established principle, Defendants urge the Court to reject *Huff*, arguing that it "misstates the law" and "is not even good law" in the Second Circuit.  Reply at 3.  The multiple district courts within the Second Circuit that continue to apply *Huff* (*see* Opp. at 7-8), and the cases upon which Defendants seek to rely in the Reply, directly contradict Defendants' argument.  For example, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168 (2d Cir. 2005) (Reply at 3), was expressly relied upon by the Second Circuit in *Huff* in support of its analysis regarding the prudential exception.  *See Huff*, 549 F.3d at 109.  Defendants also incorrectly rely on *Keepers, Inc. v. City of Milford*, 807 F.3d 24 (2d Cir. 2015) (like *Mid-Hudson*, cited for the first time in the Reply at 3 n.5), a First Amendment case that in fact *reiterated* the *Huff* principle that "a plaintiff who asserts the claims of a third party ***can obtain*** standing by establishing (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests," *id.* at 41, and held that the plaintiff had not satisfied the second prong of the test in that instance because it "has not shown, or even alleged, that its owners and officers [it sought to represent under the prudential exception] would have any difficulty asserting

2

their own interests." *Id.* at 41-42 (emphasizing "the limited nature of our holding").[2] Contrary to Defendants' misstatement of Second Circuit caselaw, *Huff* remains good authority on which courts across the country routinely rely in confirming European asset managers' standing.

Indeed, federal courts, ***including Judge Andrews in this District***, have applied *Huff* repeatedly in PSLRA cases when rejecting arguments contesting the standing of European asset managers, including SEB, identical to those Defendants make here—often noting the underlying funds' legal inability to bring suit and the manager's trustee-like role vis-à-vis the funds. *See* Opp. at 7-8; *see also Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*, 2022 WL 1515451, at *4 (S.D.N.Y. May 13, 2022); *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361, at *4 (N.D. Ohio Nov. 28, 2017). Defendants sidestep this extensive body of case law. Defendants also inexplicably ignore two opinions directly confirming SEB's standing based on developed evidentiary records (Opp. at 7)—*In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 581 (S.D.N.Y. 2009) (concluding at summary judgment that SEB "has standing to sue on behalf of [its] Swe[]dish fund because it qualifies for the *Huff* exception," based on expert testimony); and *City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*, 2014 WL 4799659, at *3-5 (D. Col. Sept. 26, 2014) (finding, based on "various declarations or position papers from lawyers in Sweden and Luxembo[u]rg," that SEB had standing under the *Huff* exception "given that SEB holds trustee-like powers over the [funds'] property and the funds are prohibited under Swedish and Luxembourg law from

---

[2] *Keepers*'s further discussion of constitutional standing, which did not address *Huff*, is inapplicable here. The *Keepers* plaintiff sought to bring First Amendment claims based on the rights of other businesses to retain anonymity—facts wholly distinguishable from this case, where SEB brings securities claims on behalf of its own investment funds that are not legal entities and cannot seek legal recourse for their injuries. *See Keepers*, 807 F.3d at 39-43.

3

bringing the claims herein their own right").[3]

Each of these cases addressed the precise third-party standing issue presented here—the ability of an asset manager to assert claims on behalf of investment funds that otherwise were incapable of acting—unlike *Storino* and the other cases Defendants cite for the first time in the Reply (Reply 3 n.4), which involve fundamentally different contexts and legal principles. *See, e.g.*, *Storino*, 322 F.3d at 298-99 (rejecting argument that landowners challenging a zoning ordinance could "stand[] in the shoes" of persons directly impacted by the ordinance).[4] None of Defendants' cited cases involved a plaintiff like SEB that stands in a trustee-like role with respect to its own investment funds. *See Vivendi*, 605 F. Supp. 2d at 576 ("owing to the special nature of [trustees'] relationship to the assets' beneficial owners, the law grants these plaintiffs the right— if not imposes on them the duty—to bring these claims"); *id.* at 581 ("Defendants' expert further concedes that in writing the law governing the [SEB] funds, the legislature intended to 'import the main characteristics of the Common law trust.'"); *see also Sprint*, 554 U.S. at 287-88 (confirming that plaintiffs like trustees "and so forth" have standing under the prudential exception). SEB's

---

[3] Defendants also ignore that SEB has repeatedly been appointed as a lead plaintiff and class representative by multiple federal courts—including in the Third Circuit. *See, e.g.*, *City of Warwick Ret. Sys. v. Catalent, Inc.*, No. 3:23-cv-01108-ZNQ-JTQ (D.N.J.); *SEB Inv. Mgmt. AB v. Endo Int'l., plc*, No. 2:17-cv-03711-TJS (E.D. Pa.); *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, No. 3:22-cv-03811-TLT (N.D. Cal.); *In re Intel Corp. Sec. Litig.*, No. 5:20-cv-05194-EJD (N.D. Cal.); *Lu v. Align Tech., Inc.*, No. 3:18-cv-06720-VC (N.D. Cal.); *SEB Inv. Mgmt. AB v. Symantec Corp.*, No. 3:18-cv-02902-WHA (N.D. Cal.).

[4] *See also Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) (criminal defense attorneys could not pursue claims on behalf of their clients based on attorney-client relationship); *Potter v. Cozen & O'Connor*, 46 F.4th 148, 156 (3d Cir. 2022) (discussing shareholder standing); *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 189 (3d Cir. 2006) (property owners lacked standing to claim that construction of storage facility would limit the African-American vote in township); *Lodge v. U.S. Attorney General*, 91 F.4th 1107, 1111 (11th Cir. 2024) (son lacked standing to challenge statute that injured his father), *vacated and superseded*, 92 F.4th 1298 (11th Cir. 2024); *Bria Health Servs. LLC v. Eagleson*, 950 F.3d 378, 385 (7th Cir. 2020) (nursing home consultants could not sue on behalf of nursing home residents); *Fleck & Assocs. v. City of Phx.*, 471 F.3d 1100, 1105 (9th Cir. 2006) (club lacked standing to bring claims based on the privacy rights of its members).

standing, as ratified by multiple federal courts, is clear. *See SEB Inv. Mgmt. AB v. Wells Fargo & Co.,* 2025 WL 1243818, at *4 (N.D. Cal. Apr. 25, 2025) ("courts have ***routinely found*** asset managers like SEB to have standing to represent their investment funds under the prudential exception to Article III standing") (collecting cases).

*Second*, Defendants contend that SEB's assignment-based standing "directly conflict[s] with Third Circuit precedent." Reply at 2.[5] That assertion is incorrect. Defendants disregard that *Lutter v. JNESO* merely recites the "general rule" that "a plaintiff in federal court must have Article III standing on the date the lawsuit was commenced," before addressing exceptions to this rule. 86 F.4th 111, 124-26 (3d Cir. 2023) (assessing standing based on new allegations in amended complaint post-dating initial complaint).[6] Defendants cite no authority to support their unworkable rule that lead plaintiff movants in PSLRA cases who (unless they filed the initial complaint, which SEB did not do here, D.I. 1) first appear before a court when their motion is timely filed within the statutory deadline, must obtain assignments prior to the filing of an initial complaint ***by a different plaintiff***. All of the cases before the Court addressing ***that*** question have approved assignments to lead plaintiff movants that were executed before their motions for appointment were filed. *See* Opp. at 8 & n.4. SEB plainly satisfies this requirement and validly asserts Gamla Liv's claims.

Dated: May 7, 2025

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Gregory V. Varallo*
Gregory V. Varallo (DE Bar ID #2242)

---

[5] It is undisputed that Gamla Liv's assignment was effective when SEB first appeared on August 2, 2024, through its timely lead plaintiff motion. *See* D.I. 15-1 at 8-10.

[6] *Lutter*'s analysis is consistent with how other courts have treated post-complaint assignments. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043-44, 1065 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015) ("post-complaint assignment from a party that clearly had standing" gave class representative "standing to prosecute this case.").

Andrew Blumberg (DE Bar ID #6744)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com
andrew.blumberg@blbglaw.com


-and-


Robert F. Kravetz (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Robert.kravetz@blbglaw.com


*Liaison Counsel for Lead Plaintiff SEB Investment Management AB*

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Jamie M. McCall (*pro hac vice*)
Johnston de Forest Whitman, Jr. (*pro hac vice*)
Joshua E. D'Ancona (*pro hac vice*)
Joshua A. Materese (*pro hac vice*)
Nathan A. Hasiuk (*pro hac vice*)
Nathaniel C. Simon (*pro hac vice*)
Farai Vyamucharo-Shawa (DE Bar ID #7002)
Aubrie L. Kent (*pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmccall@ktmc.com
jwhitman@ktmc.com
jdancona@ktmc.com
jmaterese@ktmc.com
nhasiuk@ktmc.com
nsimon@ktmc.com
fshawa@ktmc.com
akent@ktmc.com

*Counsel for Lead Plaintiff SEB Investment Management AB and Lead Counsel for the Class*

6