## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE HUMANA INC.
SECURITIES LITIGATION

)
)
)
)

C.A. No. 24-655-JLH

## MEMORANDUM ORDER

This is a securities fraud class action. On September 13, 2024, I appointed SEB Investment Management AB ("SEB") as Lead Plaintiff. (D.I. 38; D.I. 13.) Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). The operative pleading is the Consolidated Class Action Complaint. (D.I. 54.) Pending before the Court is Defendants' Motion to Dismiss Consolidated Class Action Complaint. (D.I. 60.) For the reasons set forth below, the motion to dismiss is DENIED-IN-PART and GRANTED-IN-PART.

1.    I write for the parties and thus assume familiarity with the allegations in the Consolidated Class Action Complaint, which contains 629 paragraphs spanning 213 pages. (D.I. 54 ("CAC").) Briefly, this case arises from alleged "material misrepresentations and omissions that Humana, its former Chief Executive Officer Bruce D. Broussard, and its Chief Financial Officer Susan M. Diamond made during the Class Period about the Company's core Medicare Advantage business." (CAC ¶ 1.) The CAC accuses Defendants of misrepresenting to investors that Humana was not seeing an increase in patient utilization post-Covid, and that even in the event of potential increased utilization, Humana's Star ratings would be enough to offset the financial impact of any resulting costs. The CAC alleges that Defendants' false and misleading statements and omissions caused the market price of Humana stock to be artificially inflated, and that once

corrective disclosures were made, its stock price dropped, resulting in harm to investors.  The relevant time period is July 27, 2022, through October 1, 2024.  (CAC at 1.)

2.        Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A possibility of relief is not enough.  *Id.*  In determining the sufficiency of the complaint, the court must assume all "well-pleaded facts" are true but need not assume the truth of legal conclusions.  *Id.* at 679.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558 (internal quotation marks omitted).

3.        To state a claim under § 10(b) of the Exchange Act, a plaintiff must plausibly plead "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation."  *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 114 (3d Cir. 2018) (citation omitted).  A plaintiff bringing a § 10(b) claim must also satisfy the heightened pleading standards imposed by the Private Securities Litigation Reform Act ("PSLRA").  *Id.*  The PSLRA requires the pleadings to identify "each statement alleged to have been misleading" and to specify "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).  The PSLRA also requires a pleading alleging a § 10(b) claim to "state with particularity facts giving rise to a strong inference that the defendant acted

2

with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), which the Third Circuit has described as "one 'embracing [an] intent to deceive, manipulate, or defraud,' either knowingly or recklessly." *Hertz*, 905 F.3d at 114 (citation omitted). "A complaint adequately pleads a strong inference of scienter 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). Section 20(a) imposes joint and several liability upon one who controls a violator of § 10(b). 15 U.S.C. § 78t(a).

4. Defendants argue that the § 10(b) claim should be dismissed for three reasons: (1) SEB lacks standing because it did not itself purchase Humana Stock, rather its funds ("SEB Funds") did; (2) the CAC fails to allege that Defendants acted with scienter or made any false statements; and (3) the CAC fails to plead loss causation.[1] I disagree as to the first two grounds and agree, in part, on the third ground.

5. I'll start with Defendants' argument that SEB lacks standing. Case law holds that a foreign asset manager such as SEB has standing to sue on behalf of its investment funds—even though SEB itself did not purchase or sell the securities at issue. *See, e.g.*, *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 405 (D. Del. 2014) ("[T]he Court is persuaded that, regardless of whether the OFI Funds are characterized as 'mutual funds' or 'trusts,' OFI Asset Management has standing to file suit on behalf of the OFI Funds."); *see also In re Nike, Inc. Sec. Litig.*, No. 24-974, 2024 WL 4579499, at *8 (D. Or. Oct. 25, 2024); *Patel v. Coinbase Glob., Inc.*, No. 22-4915, 2022 WL 17582549, at *4–5 (D.N.J. Dec. 12, 2022); *Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*, 22-1014,

---

[1] In other words, Defendants challenge sufficiency as to elements one (a material misrepresentation or omission), two (scienter), and six (loss causation) of § 10(b). *See* ¶ 3, *supra*.

2022 WL 1515451, at *4 (S.D.N.Y. May 13, 2022); *City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*, No. 13-3325, 2014 WL 4799659, at *5 (D. Colo. Sept. 26, 2014); *cf. W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 109–10 (2d Cir. 2008).

6.      Indeed, SEB has served as lead plaintiff in multiple securities class actions.  *See, e.g.*, *SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, No. 22-3811, 2025 WL 1243818, at *4 (N.D. Cal. Apr. 25, 2025) ("[C]ourts have routinely found asset managers like SEB to have standing"); *City of Taylor*, 2014 WL 4799659, at *5 ("SEB comfortably fits within *Huff's* 'prudential exception,' given that SEB holds trustee-like powers over the funds property and the funds are prohibited . . . from bringing the claims herein in their own right."); *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 581 (S.D.N.Y. 2009) (finding that SEB, "the undisputed management company for the fund," has standing to bring its claims).

7.      The CAC alleges that SEB has "full power and authority to bring suit to recover for its investment losses" (CAC, Ex. A ¶ 4); that the "SEB Investment Management Funds cannot be represented in legal action(s) by any entity other than [SEB]" (*id*. at n.1); and describes itself as an "asset manager" that "offers a broad range of funds . . . for institutional investors" (CAC ¶ 33)—the same funds that were allegedly injured by Humana's alleged misrepresentations.  That is sufficient to allege standing.  The Court therefore rejects Defendants' challenge to SEB's standing.

8.      I'll next address Defendants' argument that the CAC fails to allege an actionable false statement or scienter.  The CAC identifies 42 allegedly materially false or misleading statements or omissions.  Plaintiffs provided a chart with their answering brief that sets forth each alleged misrepresentation; the speaker, date, and medium of the misrepresentation; the reasons why that specific misrepresentation was false or misleading when made; and where each alleged misrepresentation can be found in the CAC for additional contextual information.  (Addendum to

D.I. 62.)  I have reviewed this chart and conclude that the CAC alleges plausible § 10(b) claims and complies with the PSLRA.

9.      The alleged false or misleading statements fall into two groups: those pertaining to the Medicare Advantage Member Costs (hereinafter "Utilization Statements") and those pertaining to Humana's Star ratings (hereinafter "Star Statements").  (D.I. 61 ("Def. Br.") at 4.)  The CAC identifies "each [Utilization] statement alleged to have been misleading" and specifies "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).  Moreover, the CAC "state[s] with particularity facts giving rise to a strong inference that the [Defendants] acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  For example, the CAC alleges that on July 27, 2022, Diamond stated, "we are seeing better-than-expected results . . . based on . . . the lower inpatient utilization we mentioned."  (CAC ¶ 395.)  Yet according to Former Employee ("FE") 1, beginning in Q1 of 2022, Humana was holding monthly "Special Projects" meetings— attended by Broussard and other executives—where they actively discussed *increased* utilization. (CAC ¶¶ 39, 150–53.)  Additionally, FEs 4, 12, 5, 15, 6, 9, and 21—all in varying roles and levels of responsibility/visibility within the company—allege that at the time Diamond made that statement, Humana was seeing increased utilization.[2]  Given it's alleged that the topic of increased utilization was specifically discussed throughout various levels of the company (including up to the CEO), the CAC plausibly alleges a strong inference that Diamond was aware of the true state

---

[2] The information attributed to the FEs is sufficiently pleaded.  The CAC provides their roles, dates of employment, specific duties and responsibilities, and explains how and why each FE knew the information they were providing.  That is sufficient.  *See Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 260–63 (3d Cir. 2009) (explaining the test for evaluating sufficiency of confidential witness allegations and holding that the complaint "adequately described the duration of each CW's employment, the time period during which the CWs acquired the relevant information, and how each CW had access to such information").  It is not necessary for the CAC to identify a "report, document, memorandum, email or other writing," as Defendants suggest. (Def. Br. at 5.)

of affairs when she made that statement on July 27, 2022—and that inference is at least as compelling as Defendants' opposing inference, *i.e.*, that such specific information did not make its way to Diamond.[3]

10.    The same holds true for the Star Statements.  The CAC identifies each statement alleged to be misleading and specifies why it's misleading.  As an example, on March 27, 2023, Broussard is alleged to have said the following at a conference: "[O]ur Stars performance will carry us farther than others in the 2024 [sic]."  (CAC ¶ 429.)  Yet, the CAC alleges that in late 2021 or 2022, Humana had the results from the mock survey predicting its Stars rating two to two and a half years out.  (CAC ¶¶ 217, 226.)  The CAC further alleges that FE-1 recalled attending meetings in late 2021 or early 2022 where executives acknowledged that, based on those results, the Company was "about to take a Stars hit," and that Broussard was present at these meetings. (CAC ¶ 228.)  That is sufficient to plead both falsity and scienter.[4]

11.    I next turn to Defendants' arguments about loss causation.  Defendants are correct that the CAC fails to allege loss causation with respect to Gamla Liv in relation to the Star Statements.  Because Gamla Liv sold its stock before the alleged October 2024 "corrective disclosure"—an undisputed fact—it cannot have suffered any loss as a result of the corrective

---

[3] If the CEO was aware, as the CAC sufficiently alleges due to his presence in Special Projects meetings, it is at least as compelling—in this context and on these facts—to believe that Diamond, the CFO, was also aware as it is to believe that she was not aware.  The CAC also points to other statements where Diamond acknowledged the company actively tracked utilization ratings, further supporting an inference that she was aware of the actual utilization trend.  (*See* CAC ¶ 512.)

[4] The inference that, based on these facts, Broussard knew when he made the statement on March 27, 2023 that the company's Stars rating would not in fact "carry [the company] farther" is at least as compelling as Defendants' opposing inference that Broussard was not made aware of the underlying contradictory information from the mock Stars results.

disclosure. Plaintiffs do not dispute this argument in their response briefing. Accordingly, Plaintiffs' claim on behalf of Gamla Liv as it pertains to the Star Statements must be dismissed.

12. Defendants also argue that the CAC fails to plausibly allege loss causation for the Utilization Statements because the alleged disclosures either came from another company or simply reiterated prior disclosures without revealing new information to the market, and are thus not "corrective" disclosures. With respect to the first argument, there is no requirement in the PSLRA or the case law as to the source of the corrective disclosure. *In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 828 (D.N.J. 2006) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)); *In re Winstar Commc'ns*, No. 01-3014, 2006 WL 473885, at *14 (S.D.N.Y. Feb. 27, 2006) ("*Dura* did not set forth any requirements as to who may serve as the source of the information, nor is there any requirement that the disclosure take a particular form or be of a particular quality."). So long as the disclosure provides new information to the market, "the concealment of which caused inflation of stock price at the time of buyer's purchase," it provides a basis for loss causation if the stock price falls upon said disclosure. *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 326 (D.N.J. 2007) (citing *Winstar*, 2006 WL 473885, at *13); *see also Baer v. Shift4 Payments, Inc.*, No. 23-3206, 2024 WL 3836676, at *13 (E.D. Pa. Aug. 14, 2024). And the CAC plausibly alleges that this disclosure revealed new information to the market, because it alleges that it revealed, for the first time, that there was pent-up demand for healthcare services. (CAC ¶ 285.)

13. With respect to the remaining disclosures challenged by Defendants, I disagree that the CAC fails to plausibly allege they contained new information. On the November 1, 2023 Q3 earnings call, it's alleged that Diamond stated, for the first time, that the company expected higher utilization levels to continue into 2024. (CAC ¶ 572.) That was arguably new information not

provided by the June 16, 2023 disclosure, which announced that the company expected to see "higher-than-expected trends for the remainder of the *year*." (CAC ¶ 565) (emphasis added). On January 18, 2024, it's alleged that Humana's Form 8-K announced a higher than previously reported medical loss ratio due to an additional increase in utilization, contrary to what was previously reported. (CAC ¶ 331.) On January 25, 2024, it's alleged that Humana announced a loss of $4.42 per share, attributing it to "higher than anticipated inpatient utilization" that it was "unable to fully offset" despite prior representations, and announced that it expected the higher utilization costs to "persist *throughout* 2024." (CAC ¶¶ 338–39) (emphasis added). Each of these alleges disclosure of new information. I therefore reject Defendants' challenges to the pleading of loss causation as to the Utilization Statements.

14.     Defendants argue that the § 20(a) claim should be dismissed because the CAC fails to allege a primary violation of § 10(b). Because I conclude that the CAC alleges at least one violation of § 10(b), I will deny the request to dismiss the § 20(a) claim.

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Consolidated Class Action Complaint (D.I. 60) is DENIED-IN-PART and GRANTED-IN-PART, as follows:

a.   The motion to dismiss Plaintiffs' claims on behalf of Gamla Liv with respect to the Star Statements is GRANTED;

b.   The motion to dismiss Plaintiffs' claims on behalf of Gamla Liv with respect to the Utilization Statements is DENIED;

c.   The motion to dismiss Plaintiffs' claims on behalf of the SEB Funds is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Sur-Reply in Response to Defendants' Reply Brief in Support of Their Motion To Dismiss (D.I. 66) is GRANTED.

IT IS FINALLY ORDERED that, on or before May 26, 2026, the parties shall jointly prepare and file the following: (i) a proposed Scheduling Order consistent with Judge Hall's "Rule 16 Scheduling Order Non-Patent," and (ii) a letter, not to exceed three pages, setting forth (a) the parties' positions regarding any disputes in the proposed Scheduling Order; and (b) a list of any other issues the parties want to address at the Rule 16 Scheduling Conference.  Thereafter, the Court may schedule a Rule 16 Scheduling Conference to be held with Judge Hall.  The Scheduling Order can be found on Judge Hall's portion of the District Court's website.

Dated: April 27, 2026

_____
The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE