**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE HUMANA INC. SECURITIES LITIGATION | Case No. 1:24-cv-00655-JLH |

**STIPULATION AND ~~[PROPOSED]~~ ORDER CONCERNING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Lead Plaintiff SEB Funds AB ("Plaintiff") and Defendants Humana Inc., Bruce D. Broussard, and Susan M. Diamond ("Defendants") (collectively, the "Parties"), by and through their undersigned counsel, stipulate and agree that this order ("Order") will govern the management of electronic discovery in the above-captioned case. "Producing Party" means any Party from whom electronically stored information is requested, and "Requesting Party" means the Party that has requested the production of electronically stored information.

## I. COOPERATION

Consistent with the Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information (the "Default Standard"), the Parties will work cooperatively to reach agreements on how to conduct discovery in this Action.

## II. PRESERVATION

The Parties will meet and confer in good faith regarding the scope of preservation, including the custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with the litigation, as well as relevant data sources that a Party is not preserving, or reasonably believes need not be preserved, on grounds of undue burden or cost.

Each Party is responsible for taking reasonable and proportional steps to preserve potentially relevant documents and electronically stored information ("ESI") in its possession, custody, or

control. ESI must be collected in a manner that preserves all reasonably available metadata. The following categories of ESI identified generally need not be preserved in this case:

1. "deleted," "slack," "fragmented," or "unallocated" data on hard drives;
2. Random access memory (RAM), temporary files, or other ephemeral data stored on hard drives that cannot be preserved without disabling the operating system;
3. On-line access data such as temporary internet files, history, cache, and cookies;
4. Data in metadata fields that are frequently updated automatically, such as last opened dates;
5. Back-up data that are duplicative of data that are more accessible elsewhere;
6. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is saved elsewhere;
7. Server, system, or network logs;
8. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report; and
9. Data remaining from systems no longer in use that is unintelligible on the systems in use.

## III. COLLECTION AND PROCESSING

**A. De-duplication.** When collecting and processing data, each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values at the parent-document level, in a manner that does not break-up document families. Attachments should not be eliminated as duplicates unless the parent email and all attachments are all exact duplicates. The following are not, and shall not be treated as exact duplicates, and may not be removed as a means of culling the

data set for review: (i) emails that include content in the BCC or other blind copy field and emails that do not include content in those fields, even if all remaining content in the email is identical; (ii) near-duplicate documents; and (iii) lesser included emails of a more inclusive email thread across the entire collection. The ALL CUSTODIANS metadata field (or its equivalent, based on the operating system, e.g., CUSTODIAN-ALL) shall list each custodian, separated by a semicolon, who was a source of a produced document. To ensure accuracy, the ALL CUSTODIANS metadata field shall be populated by an automated process and may not be populated manually. To the extent the ALL CUSTODIANS field becomes outdated as a result of rolling productions of documents, the Producing Party shall provide an overlay file updating the information in that field.

**B. De-NISTing.** When collecting and processing data, Parties shall remove from the searchable data set known traceable system and application files identified by hash value when compared to the National Software Reference Library reference data set (RDS Hash), a sub-project of the National Institute of Standards and Technology (NIST), using information contained on the current NIST file list (i.e., De-NISTing). Parties shall also remove other standard system file extensions, including but not limited to CAB, CHK, CLASS, COD, COM, DLL, DRV, INF, INI, JAVA, LIB, and SYS.

**C. Email Threading.** A Producing Party may use commercially available email threading technology to eliminate lesser-inclusive email messages from review where: (i) the content of those messages, including all text, attachments, and BCC recipients, are wholly reflected in a later-in-time email message (i.e., an inclusive email message) that will be retained as part of the ESI universe subject to review for responsiveness; and (ii) potentially responsive emails from the relevant time period are not otherwise excluded from review. Except as otherwise agreed in writing by the Parties or ordered by the Court, production of a more inclusive email thread does

not relieve a Producing Party of its obligation to produce responsive earlier-in-time emails in the thread, even if their exact content is contained within a more inclusive email, and no document shall be withheld from production solely on the basis that it is included in a more-inclusive email produced. To the extent a Requesting Party reasonably believes that a lesser inclusive email that was not produced should be produced, it may request those documents by Bates number, which request the Producing Party cannot unreasonably refuse.

**D. Other Filters.** To the extent a Party seeks to utilize any other filters or culling mechanisms to cull the dataset prior to review, including date ranges, email domains, file types, search terms, technology-assisted review, or generative AI tools, it shall disclose all such proposed measures to the Requesting Party, and the Parties will meet and confer in good faith regarding such proposed measures, subject to the limitations set forth in Section IV.

## IV. SEARCH METHODOLOGY

**A. Transparency and Cooperation.** The Parties will meet and confer to attempt to reach agreement regarding the sources of material to be collected for review by each Party in response to the other's discovery requests and any search terms, date restrictions, or other methods to be applied to a particular universe of material or data source prior to review for responsiveness.

**B. Easily Targeted Responsive Documents.** Documents and categories of documents that are relevant to this action, that a Party has agreed to produce, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry, may be collected and reviewed without the use of search terms or other advanced search methodology (*e.g.*, analytics, predictive coding, or technology-assisted review). The Producing Party must inform the Requesting Party in writing which categories of documents and data sources it intends to produce with and without the use of search terms or other advanced search methodology.

**C. Search Terms.** If a Producing Party intends to identify potentially responsive ESI, which are not already known to be responsive, using search terms, the Parties will meet and confer in good faith to reach agreement on the search terms.

To facilitate these discussions, the Producing Party shall disclose the search terms it proposes to use, the tool and index being used, and the relevant syntax and operators of the search tool. The Producing Party shall also provide hit reports reflecting the following with respect to each proposed search term: (i) the number of documents with hits for that term; (ii) the number of unique documents, i.e., documents which do not have hits for any other term; (iii) the number of family members, including the documents with hits, of the documents with hits for that term; and (iv) the total number of documents in the dataset against which search terms were run, the total number of documents containing hits, and the total number of documents containing hits plus families. Search terms shall only be run after date filtering, de-NISTing, and de-duplication have been applied, and the hit counts and other totals required to be disclosed reflect the results of those processes. In developing search terms, the Producing Party shall, to the extent reasonably feasible, (i) consult relevant documentation and employees, (ii) include internal project and code names, acronyms, abbreviations, nicknames, and common misspellings, and (iii) perform quality control testing to assess the effectiveness of the search terms.

**D. Technology-Assisted Review.** No Party may use predictive coding or technology-assisted review ("TAR") for the purpose of identifying or culling the documents to be reviewed or produced, including any methodology that involves "stacking" TAR with the application of search terms or other tools, unless the Party intending to use TAR notifies the Requesting Party before use and provides a description of its TAR methodology sufficient to permit a good-faith meet and confer regarding the use of TAR. Such description shall include: (i) the custodians and data sources

against which TAR will be run; (ii) the TAR tool being used; (iii) the general processes for training and quality control; and (iv) the general measures to be used to validate the results of the TAR methodology.

**E. Generative AI.** No Party may use generative AI ("GenAI") tools for the purpose of identifying or culling its own documents to be reviewed or produced, unless the Party intending to use GenAI for its own document review and production purposes notifies the Requesting Party before use and provides a description of its GenAI technology and process sufficient to permit a good-faith meet and confer regarding the use of GenAI. Such description shall include: (i) the data sources against which the GenAI tool will be run; (ii) the GenAI tool being used; (iii) the general processes for training and quality control; and (iv) the general measures to be used to validate the results of the GenAI methodology. No Party may upload, input, submit, process, review, analyze, organize, or store any information designated by another Party or nonparty as "Confidential Material" or "Highly Confidential Material" into any GenAI or other large language model technology that: (i) uses such material to train models; (ii) retains such material in a manner inconsistent with the governing protective order; (iii) makes such material accessible to unauthorized third parties; or (iv) is open or available to the public, including standard ChatGPT, Claude, Gemini, or similar publicly available tools. These restrictions also apply to any information derived from material designated by another Party or nonparty as "Confidential Material" or "Highly Confidential Material" that reveals the substance of such material.

## V. PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Hard-copy documents must be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The documents must be physically unitized (*i.e.*, documents will be produced as they exist at the time of collection) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document must be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image. Multi-page OCR text for each document must also be provided. The OCR software must maximize text quality. Settings such as "auto-skewing" and "auto-rotation" must be turned on during the OCR process.

## VI. PRODUCTION OF ESI

**A. TIFF Images.** Except as provided in VI.B. and VI.C, documents shall be produced as single-page, black and white, TIFF Group IV, 300 DPI TIFF images. Each TIFF file should be assigned a unique name matching the Bates number of the corresponding image, and Bates numbers and confidentiality designations shall be electronically branded on each produced TIFF. TIFFs must show all text, hidden content, tracked changes, speaker notes, comments, images, and URLs to hyperlinked content, that would be visible to a reader using the native software that created the document. For example, TIFFs of email messages must include the BCC line, and documents must display comments and hidden content. If the image does not accurately reflect the document as it was kept in the ordinary course of business, including all comments, edits, tracking, etc., the Parties must meet and confer in good faith on production format options. These images should be provided in a separate folder and the number of files per folder should be limited to 1,000 files.

**B. Color.** If an original ESI document contains color, and the color is necessary to understand the meaning or content of the document, then the Producing Party must produce the document in color upon reasonable request.

**C. Native Files.** MS-Excel and other spreadsheets, MS-PowerPoint and other presentations, MS-Word and other documents with tracked changes, media files (e.g., audio and video files), and animated image files (e.g., .gif) shall be produced in native format, along with either a single-page Bates stamped image slip sheet stating that the document has been produced in native format or, for MS-PowerPoint and other presentations and MS-Word and other documents with tracked changes, Bates-stamped color TIFF/JPG images. If any other document requires production in native format to be usable, the Requesting Party may make a reasonable request for the document to be produced natively, and the Producing Party shall respond in good faith. Each native file must be named according to the Bates number it has been assigned and must be linked directly to its corresponding record in the load file using the Native Link field, along with extracted text (where extracted text is available) and the applicable metadata fields identified in Appendix A. Native files will be produced in a separate folder on the production media.

**D. Short Form Communications**. To the extent responsive text messages, SMS, MMS, iMessages, Slack and Teams messages, and other short form communications are identified, they shall be produced in RSMF or similar searchable format that reasonably preserves the presentational features of the conversation, including reactions, emojis, images, video files, animations, and the like, along with reasonably available metadata. The responsive communications shall be produced, unitized in 24-hour increments, and shall include all other non-privileged messages in the same 24-hour increment, and any attachments thereto. To the extent a Requesting Party believes that any short form communications were not produced in a usable or

searchable format that reasonably preserves the presentational features of the original message, available metadata, or reasonably necessary context, the Parties will meet and confer in good faith regarding the production of additional contextual information or metadata and any reasonable and proportional adjustments to the proposed production format. To the extent ephemeral messaging tools or applications were utilized by a Producing Party or its employees to communicate regarding business matters, the Parties will meet and confer regarding the appropriate production format.

**E. Mobile and Handheld Device Documents and Data**. To the extent responsive data is identified on a mobile or handheld device (other than Short Form Communications, which are governed by VI.D) that is not susceptible to the production protocols set forth herein, the Parties will meet and confer in good faith to address the production format of any responsive documents and data stored on or accessible from such mobile or handheld devices.

**F. Collaboration and Productivity Tools and Platforms**. To the extent responsive documents and ESI from collaboration and productivity tools and platforms are identified, the Parties will meet and confer in good faith regarding the production format for documents and ESI from collaboration and productivity tools and platforms.

**G. Structured Data**. To the extent responsive documents and ESI are stored in a database or other structured format, the Parties will meet and confer in good faith regarding appropriate methods of production. The Parties must consider whether relevant information can be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file. This paragraph is without prejudice to any Party's right to seek production of all or part of a database in its entirety with its original functionality, rather than through a report generated through queries.

**H. Generative AI Data**. To the extent Generative AI data is responsive, the Parties will meet and confer regarding appropriate production format.

**I. Attachments**. If any part of an email or its attachments is responsive, the entire email and all attachments must be produced, with the parent-child relationship (the association between an attachment and its parent document, which are referred to as "families") maintained in the ordinary course of business preserved. Attachments must be produced sequentially after the parent email, with accurate attachment ranges for those files in the metadata fields identified below to relate the documents in the production. If one or more members of the family are privileged in their entirety, the family must be Bates numbered with a placeholder for the removed document, and the removed document must be logged on a privilege log. Parties shall not produce as separate attachments formatting files (e.g., .ole or .dll) or embedded logos or similar non-substantive images that are visible from the parent email, but extracted as separate files during processing.

**J. Hyperlinked Documents**. The Parties agree to undertake reasonable efforts to collect and produce responsive documents shared via hyperlink, URL, document stub, pointer, or other reference link within emails, calendar items, and short messages, to the extent such linked documents are reasonably accessible to the Producing Party without undue burden. A Producing Party may produce the current version of the linked document in the first instance. The Parties agree to meet and confer regarding any further efforts to collect and produce hyperlinked documents.

**K. Embedded Objects**. Non-substantive embedded objects, including, but not limited to logos, icons, emoticons, and footers need not be produced as separate files or in family relationship to the documents in which they are embedded. All other embedded files must be produced as attachments to the document that contained the embedded file, with the parent/child

relationship preserved. The embedded files must be marked with a "YES" in the load file under the "Is Embedded" metadata field. Logos need not be extracted as separate documents if they are displayed in the parent document.

**L. Dynamic Fields**. All dynamic date and time fields, where such fields are processed to contain a value, shall be processed with a single date and time setting that is consistent across each Party's productions, Coordinated Universal Time (UTC) or Eastern Standard Time (EST), and in a way that maintains the date/time shown in a document as it was last saved by the custodian or end user, not the date of collection or processing (i.e., force off auto date).

**M. Compressed File Types**. Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) must be decompressed so that the lowest-level document or file is extracted.

**N. Encrypted Files**. To the extent reasonably feasible, any password protected or encrypted documents shall be processed to unlock any passwords or encryption, and the unlocked or decrypted document produced. To the extent such documents cannot be processed successfully to decrypt the documents, the Producing Party will: (i) produce a slip-sheet for each encrypted or password protected document that cannot successfully be processed, indicating that the document cannot be decrypted, and (ii) provide the metadata for the document. The Parties will meet and confer in good faith regarding any other appropriate action that may be required to access and produce the encrypted data.

**O. Redactions**. A Party may only redact information subject to a valid claim of privilege, attorney work product, or where required by law to protect personal identifying information from unlawful disclosure. Documents containing both privileged information and responsive nonprivileged information must be produced with the privileged information redacted in such a way as to show the location of the redaction in the document. Redactions must be

narrowly tailored to the specific information over which the Party claims privilege or work product protection. No redactions for relevance or non-responsiveness are permitted. All privilege redactions must be properly logged. If documents that a Party has agreed to produce in native format are to be redacted, the Party must ensure that proper formatting and usability are maintained, including producing such documents in a manner that displays all non-privileged information that would be available in the document's native format, including hidden rows and columns, speaker notes, tracked changes, and comments, including the date, time and author of any notes, comments and track changes, in accordance with the procedures outlined herein. Spreadsheets requiring redaction must be redacted using native redaction software and produced in native format.

**P. Bates Numbering**. Each TIFF/JPG image produced shall be branded with a unique Bates number stamped onto the lower right-hand side of each page in a way that does not obliterate or obscure any information from the source document and which: (i) identifies the Producing Party; (ii) maintains a consistent length of nine numeric digits (including 0-padding) across the entire production; and (iii) is sequential, both within a given document and across document productions, but should not include the Bates number in the extracted text of the ESI. Each TIFF/JPG image file produced shall be named with the same page-level Bates number branded on the underlying image. For ESI produced subject to a claim of confidentiality, the Producing Party shall electronically brand the appropriate confidentiality designation onto each page of the document, but should not include the confidentiality designation in the extracted text of the ESI.

**Q. Text Files and OCR.** All documents and ESI shall be produced with a corresponding searchable text file (i.e., one .txt file per electronic file as opposed to one text file per page). The text file shall contain full text extraction for all files that originated in an electronic

format and be created by extracting text directly from the underlying native file. When no extracted text is available for a file that originated in an electronic format, or the file must be redacted prior to production, the text file shall be generated by applying industry standard OCR technology to the redacted version of the document or ESI. Each text file shall be named with the beginning Bates number of the electronic file to which the text file relates.

**R. Metadata.** All ESI must be produced with a delimited, database load file that contains the metadata fields listed in Appendix A hereto, to the extent such metadata already exists at the time of collection, or can be generated using industry standard processing tools. The produced metadata must have the correct encoding to enable preservation of the documents' original language. Metadata that contains privileged or work-product information may be redacted and identified in a privilege log. For ESI that does not conform to the metadata listed in Appendix A, the Parties must make a good-faith effort to produce relevant metadata, and will meet and confer in good faith upon request. Nothing in this Order shall be interpreted as requiring any Party to create and produce any metadata that does not already exist or cannot be generated using industry standard processing tools.

**S. Production Media**. All documents and ESI shall be produced via secure FTP or other secure file transfer or other mutually agreeable production media, along with a cover letter identifying the production volume and Bates ranges of the production. Any replacement productions shall be clearly identified as such in the cover letter. All productions shall be encrypted, and the Producing Party shall provide a decryption key at the time of production, via separate cover.

## VII. MISCELLANEOUS

**A. Modification**. This Order may be modified by stipulation, or by order of the Court for good cause shown.

**B. Compliance Issues**. The Parties agree to promptly notify each other concerning any technical problems associated with complying with this Order or if, upon further investigation, they should determine that compliance with any aspect of this Order presents undue burden or expense with respect to a specific category of data or documents. The Parties shall promptly confer in an effort to resolve these issues, and the Parties may reach written agreements on variations from this Order without requiring a formal amendment to this Order.

**C. Discoverability and Admissibility**. Nothing in this Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any documents or data are preserved and may be asserted at the appropriate time.

Agreed to and Stipulated by:

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/Anthony M. Calvano
Gregory V. Varallo (DE Bar ID #2242)
Anthony M. Calvano (DE Bar ID #6265)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com
anthony.calvano@blbglaw.com

-and-

Robert F. Kravetz (Admitted *Pro Hac Vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
robert.kravetz@blbglaw.com

*Liaison Counsel for Lead Plaintiff SEB Funds AB*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Jamie M. McCall (Admitted *Pro Hac Vice*)
Joshua E. D'Ancona (Admitted *Pro Hac Vice*)
Nathan A. Hasiuk (Admitted *Pro Hac Vice*)
Nathaniel C. Simon (Admitted *Pro Hac Vice*)
Aubrie L. Kent (Admitted *Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
jmccall@ktmc.com
jdancona@ktmc.com
nhasiuk@ktmc.com
nsimon@ktmc.com
akent@ktmc.com

*Counsel for Lead Plaintiff SEB Funds AB and Lead Counsel for the Class*

October 8, 2026

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

/s/ Elaine M. McCabe
Kevin M. Coen (DE Bar ID #4775)
Elaine M. McCabe (DE Bar ID #7626)
1201 North Market Street
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
kcoen@morrisnichols.com
emccabe@morrisnichols.com

**ALSTON & BIRD**
Robert R. Long (Admitted *Pro Hac Vice*)
Elizabeth Gingold Clark (Admitted *Pro Hac Vice*)
Timothy J. Fitzmaurice (Admitted *Pro Hac Vice*)
William J. Lasker (Admitted *Pro Hac Vice*)
1201 W Peachtree Street, Suite 4900,
Atlanta, GA 30309
Telephone: (404) 881-7000
robert.long@alston.com
elizabeth.clark@alston.com
tim.fitzmaurice@alston.com
will.lasker@alston.com

*Counsel for Defendants*

**IT IS SO ORDERED** this 14th day of October, 2026.

The Honorable Jennifer L. Hall
United States District Judge

**APPENDIX A – METADATA FIELDS**

| Field Name | Description | Example / Format |
|---|---|---|
| FIRSTBATES | Begin Bates number | DOC_000001 |
| LASTBATES | End Bates number | DOC_000002 |
| PGCOUNT | Number of pages in a document | 001 |
| FILE_SIZE | File size in bytes | 765952 |
| APPLICATION | Commonly associated application for the specified file type | |
| PATH | Original file/path of the location of the document where it was stored at the time of collection | Joe Smith/email/Inbox<br>Joe Smith/email/Deleted Items |
| BEGATTACH | Begin Bates number of family unit | DOC_000001 |
| ENDATTACH | End Bates number of family unit | DOC_000004 |
| ATTACHCOUNT | Number of attachments to a document | |
| PARENT BEG BATES | Beginning Bates number of the parent document (email, message, or file) for any document family member | DOC_000001 |
| CUSTODIAN | The individual from whose files the document was collected | Smith, John |
| ALL CUSTODIANS | Name(s) of person(s) or other data source from where documents/files are produced. | |
| FROM | Sender of the e-mail, chat, instant message, text, SMS, MMS, etc. | For email: Jane Smith (jane@smith.com)<br>For text/SMS/MMS: +1(234)567-8900 John Smith (owner)<br>For chats and instant messages: John Smith <jsmith@icloud.com> |
| TO | Main recipient(s) of the e-mail, chat, instant message, text, SMS, MMS, etc. | For email: John Smith (john@smith.com)<br>For text/SMS/MMS: +1(234)567-8900 John Smith (owner)<br>For chats and instant messages: John Smith <jsmith@icloud.com> |
| CC | Recipient(s) of Carbon Copies of the e-mail message | Frank Thompson (frank@thompson.com) |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message | John Cain (john@cain.com) |
| SUBJECT | Subject field extracted from the metadata of an email file | FWD: Chain Letters |
| DATE SENT | Date email was sent | 1/30/2000 |

| | | |
|---|---|---|
| TIME SENT | Time email was sent | 16:30:05 |
| MSGID | Email system identifier assigned by the host email system, extracted from the parent message during processing, and used to tie together email threads | 01C72AC4C |
| CONVERSATION ID | Email thread identifier | |
| MEETING DATE | Date of calendar appointment entry | 1/30/2000 |
| MEETING START TIME | Start time of calendar appointment entry | 16:30:05 |
| MEETING END TIME | End time of calendar appointment entry | 16:30:05 |
| FILENAME | Original name of the file or subject of email. | DemoPresentation.pptx |
| TITLE | Title provided by user within the document | |
| AUTHOR | Original author information extracted from the metadata of the native file. | John Smith |
| LAST_AUTHOR | Last author information extracted from the metadata of the native file. | John Doe |
| DATE_CREATED | Date file was created. | 1/30/2000 |
| TIME_CREATED | Time file was created | 16:30:05 |
| DATE_MOD | Date file was last modified. | 1/30/2000 |
| TIME_MOD | Time file was last modified | 16:30:05 |
| DATE_ACCESSD | Date file was last accessed | 1/30/2000 |
| TIME_ACCESSD | Time file was last accessed | 16:30:05 |
| DOCUMENT TYPE | The type of document. | Email, Email Attachment, eDoc, Attachment, Embedded File, Linked Document, Short Message/Chat, etc. |
| FILE_EXTEN | Original extension of a file. | Ppt<br>Msg for emails from a container |
| MD5HASH | MD5 hash value of the document. | 1d30c0ebc0e319b4e8147 559b42667c1 |
| PATH | Path to original location of document, including original file name. | |
| DUPLICATE PATH | Original file/path of the locations where de-duplicated documents (unproduced duplicates) were located at the time of collection. This should include location, and for eDocs, the file name and file extension. Folder names and path should be included and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path. Multiple values should be separated by semicolons | |

| | | |
|---|---|---|
| CONFIDENTIALITY DESIGNATION | If document assigned confidentiality by Counsel. | Confidential |
| REDACTED | Indication of whether the document has been redacted. | Yes or No |
| WITHHELD | Indication of whether the document has been withheld. | Yes or No |
| HIDDEN CONTENT | Denotes the presence of tracked changes/hidden content/embedded objects in items (Y/N). | |
| IS EMBEDDED | The yes/no indicator of whether a file is embedded in another document. | Yes or No |
| TIME ZONE | The time zone that the data is set to when processed. | PST, CST, EST, etc. |
| NATIVE LINK | Relative path and file name for native files on the production media. | .\PRODNAME\NATIVES\NATIVES001\DOC_000001.pptx |
| TEXT LINK | Relative path and file name for text file on the production media. | .\PRODNAME\TEXT\TEXT001\DOC_000001.txt |
| Volume | The numeric sequential iteration of the production. | Vol001 |